**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE**

| | | |
|---|---|---|
| **DONALD MIDDLEBROOKS,** | ) | |
| | ) | |
| Plaintiff, | ) | **CAPITAL CASE** |
| | ) | |
| v. | ) | No. 3:19-cv-01139 |
| | ) | |
| **TONY PARKER, in his official capacity** | ) | **JUDGE CAMPBELL** |
| as Tennessee's Commissioner of | ) | |
| Correction, | ) | |
| | ) | |
| **TONY MAYS, in his official capacity as** | ) | |
| **Warden of Riverbend Maximum Security** | ) | |
| **Institution,** | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants—Tony Parker, Commissioner of the Tennessee Department of Correction ("TDOC"), and Tony Mays, Warden of Riverbend Maximum Security Institution—move under Fed. R. Civ. P. 12(b)(1), Fed. R. Civ. P. 12(b)(6), and Local Rule 7.01 to dismiss Plaintiff's Complaint. This Complaint should be dismissed for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

**PROCEDURAL BACKGROUND**

Plaintiff was convicted of first-degree murder and sentenced to death for participating in the torture and killing of a fourteen-year-old boy. *State v. Middlebrooks*, 840 S.W.2d 317, 324 (Tenn.

1992), c*ert dismissed*, 510 U.S. 124 (1993).[1] Over the course of three and a half hours, Plaintiff and two companions beat the child with brass knuckles and a switch, urinated in his mouth, burned him with a cigarette lighter, forced a stick into his anus, and slashed open his chest and wrist, before ultimately stabbing him to death. *Id.* at 324–25. Plaintiff now seeks to prevent the State of Tennessee from carrying out his sentence by challenging Tennessee's methods of executing death-sentenced inmates.

Tennessee's primary method of execution is lethal injection. Tenn. Code Ann. § 40-23-114. A person sentenced to death for an offense committed before January 1, 1999, however, may "elect to be executed by electrocution by signing a written waiver waiving the right to be executed by lethal injection." *Id.* § 40-23-114(b). Electrocution is also the method if either lethal injection is "held to be unconstitutional" or one or more of the "ingredients essential to carrying out a sentence of death by lethal injection is unavailable through no fault of the department." *Id.* § 40-23-114(e), 114(e)(1), 114(e)(2).

TDOC is the agency responsible for adopting the rules and regulations necessary to carry out death sentences. *Id.* § 40-23-114(c). The shifting in the availability of lethal-injection chemicals has forced TDOC to change its lethal injection procedures several times in the past decade. Prior to 2013, TDOC used a three-drug protocol of sodium thiopental, pancuronium bromide, and potassium chloride. *Workman v. Bredesen*, 486 F.3d 896, 902 (6th Cir. 2007). When sodium thiopental became unavailable, TDOC changed to a single-drug protocol using pentobarbital. *West v. Schofield*, 519 S.W.3d 550, 552 (Tenn. 2017), *cert. denied sub nom. West*

---

[1] *See also Middlebrooks v. State*, No. M2001-01865-CCA-R3PD, 2003 WL 61244, at *1 (Tenn. Crim. App. Jan. 9, 2003) (affirming denial of post-conviction relief); *Middlebrooks v. Carpenter*, 843 F.3d 1127 (6th Cir. 2016) (affirming denial of federal habeas relief), *cert denied sub nom. Middlebrooks v. Mays*, 138 S.Ct. 503 (2017).

*v. Parker*, 138 S. Ct. 476 (2017), and *cert. denied sub nom. Abdur'Rahman v. Parker*, 138 S. Ct. 647 (2018). But in 2018, pentobarbital became unavailable, so TDOC had to revise the protocol again, adopting a new three-drug protocol using midazolam (a sedative in the benzodiazepine family of drugs) followed by vecuronium bromide (a paralytic agent) and potassium chloride (a heart-stopping agent). *Abdur'Rahman v. Parker*, 558 S.W.3d 606, 611, 616 (Tenn.), *cert. denied sub nom. Zagorski v. Parker*, 139 S. Ct. 11 (2018), and *cert. denied sub nom. Miller v. Parker*, 139 S. Ct. 626 (2018), *and cert. denied*, 139 S. Ct. 1533 (2019).

Plaintiff herein previously challenged the constitutionality of the current three-drug protocol. In *Abdur'Rahman v. Parker*, Plaintiff joined thirty-two other death row inmates in a constitutional challenge to the three-drug protocol. *Id.* at 612 n.6. They alleged, among other claims, that "the current three-drug lethal injection protocol, on its face, violates the constitutional prohibitions against cruel and unusual punishment." *Id.* at 614. As an alternative to the State's three-drug protocol, the plaintiffs proposed TDOC adopt pentobarbital as a method of execution. *Id.* at 12. The trial court dismissed the complaint, finding that the plaintiffs failed to prove, as required by *Baze v. Rees*, 553 U.S. 35 (2008) and *Glossip v. Gross*, 135 S. Ct. 2726 (2015), "that an available alternative method of execution exists," and although it did not need to reach the issue, trial court also found that "the [p]laintiffs failed to prove the other essential element [in *Baze* and *Glossip*]—that the three-drug protocol creates a demonstrated risk of severe pain." *Abdur'Rahman*, 558 S.W.3d at 613. The Tennessee Supreme Court affirmed the trial court's judgment on the first ground and, thus, did not reach the second ground, finding that because "the [p]laintiffs failed to carry their burden of showing availability of their proposed alternative method of execution," they "failed to establish that Tennessee's current three-drug lethal injection protocol constitutes cruel and unusual punishment." *Id.* at 626.

Plaintiff filed the instant Complaint on December 18, 2019, over a year after the decision in *Abdur'Rahman*. Plaintiff again alleges that TDOC's most recent three-drug lethal injection protocol constitutes cruel and unusual punishment, violating the Eighth and Fourteenth Amendments. (D.E. 1, PageID# 55–56.) As alternatives to the three-drug protocol, Plaintiff proposes that TDOC use either nitrogen gas or pentobarbital to execute him. (D.E.1, PageID# 46–51.) He also alleges that execution by electrocution violates the Eighth Amendment by creating a substantial risk of unnecessary pain as applied to him, violating the dignity of man, and violating evolving standards of decency. (D.E. 1, PageID# 52–56.) Under 42 U.S.C. 1983, Plaintiff seeks injunctive relief, declaratory relief, attorneys' fees, and the cost of the suit. (D.E. 1, PageID# 4.) As set out below, this Complaint should be dismissed for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

## ARGUMENT

**I.     Plaintiff's Eighth Amendment Electrocution Claims (Counts II, III, IV) Should Be Dismissed for Lack of Subject Matter Jurisdiction Because They Are Not Ripe.**

   **A.     Standard of Review**

Federal Rule of Civil Procedure 12(b)(1) allows a court to dismiss a claim for lack of subject matter jurisdiction. A Rule 12(b)(1) motion "can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). A facial attack challenges "whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis." *Id.* A factual attack "challenges the factual existence of subject matter jurisdiction," and the court may consider "evidence outside of the pleadings" and "weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Id.* at 759–60. In both kinds of challenges, the plaintiff has the burden

of establishing that subject matter jurisdiction exists. *Id.* at 760.

Article III of the U.S. Constitution authorizes federal courts "to adjudicate only 'Cases' and 'Controversies.'" *Mokdad v. Sessions*, 876 F.3d 167, 169 (6th Cir. 2017). A federal court lacks subject matter jurisdiction when the alleged controversy is not yet ripe for judicial resolution. *River City Capital, L.P. v. Bd. of Cty. Comm'rs, Clermont Cty., Ohio*, 491 F.3d 301, 309 (6th Cir. 2007). "Under the ripeness doctrine, a matter is considered premature for judicial review when the alleged injury is speculative or may never occur." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1068 (6th Cir. 1998); *see also Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" (quoting *Thomas v. Union Carbide Agr. Prod. Co.*, 473 U.S. 568, 580–81 (1985))).

**B. Plaintiff's Eighth Amendment Electrocution Claims (Counts II, III, IV) Are Not Ripe.**

Plaintiff's Eighth Amendment electrocution claims are not ripe. Under Tenn. Code Ann. § 40-23-114, a death-sentenced inmate will be executed by lethal injection unless: (1) the inmate was sentenced to death for an offense committed before January 1, 1999, and elects to be executed by electrocution by signing a written waiver, *id.* § 40-23-114(b); (2) lethal injection is held unconstitutional by the Tennessee Supreme Court or the U.S. Supreme Court, *id.* § 40-23-114(e); or (3) the TDOC Commissioner certifies to the Governor that he is unable to carry out the sentence because "one or more of the ingredients essential to carrying out a sentence of death by lethal injection is unavailable," *id.*

Plaintiff's Eighth Amendment electrocution claims rest on contingent events that may never occur. To date, Plaintiff has not signed a written waiver electing to be electrocuted—indeed, Plaintiff has specifically stated that he "will not" elect a method of execution. (D.E. 1, PageID#

5

9.)  The other contingencies that would permit electrocution also have not happened and may never happen.  Furthermore, this Court has already held in similar cases that such "Electrocution Causes of Action depend entirely on future and contingent events that have not occurred and may never occur, and as a result, are unripe and nonjusticiable."  *Miller v. Parker*, No. 3:18-CV-01234, 2018 WL 6003123, at *3 (M.D. Tenn. Nov. 15, 2018) (quoting *West v. Schofield*, 468 S.W.3d 482, 494 (Tenn. 2015)), *reconsideration denied*, No. 3:18-CV-01234, 2018 WL 6069181 (M.D. Tenn. Nov. 20, 2018), and *aff'd*, 910 F.3d 259 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 399 (2018); *see also Duncan v. Carpenter*, No. 3:88-00992, 2014 WL 3905440, at *42 (M.D. Tenn. Aug. 11, 2014) ("A recent amendment to the controlling statute provides that execution by electrocution is otherwise authorized only in the event that lethal injection is held to be unconstitutional by a court of competent jurisdiction or the Commissioner [of TDOC] certifies to the governor that an essential lethal injection ingredient is unavailable.  In the absence of any allegation that either of those triggering events has happened, any challenge to the constitutionality of electrocution is not ripe for review." (citation omitted)).  Because Plaintiff's claims are not ripe, this Court must dismiss them for lack of jurisdiction.

## II.  The Complaint Should Be Dismissed Because It Fails to State a Claim Upon Which Relief Can Be Granted.

### A.  Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), this Court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  The purpose of Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."  *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).  When considering a Rule 12(b)(6) motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept [the plaintiff's] allegations as true, and draw all reasonable

inferences in favor of the plaintiff." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). To survive a Rule 12(b)(6) motion to dismiss, a complaint must raise more than a "possibility that a defendant has acted unlawfully"; there must be sufficient factual allegations to render the claim facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Wesley*, 779 F.3d at 429. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Although a court generally is limited to the pleadings when considering a Rule 12(b)(6) motion, it may "take judicial notice of other court proceedings without converting the motion into one for summary judgment." *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010).

### B. Plaintiff's Eighth Amendment Lethal Injection Protocol Claim (Count I) Is Barred by Res Judicata.

Count I should be dismissed because it is barred by the res judicata effect of the state court's judgment in *Abdur'Rahman*, which rejected constitutional challenges to the very same three-drug protocol that is challenged here. In fact, in a recent and similar case that was also brought by an *Abdur'Rahman* plaintiff, this Court held that res judicata was an unavoidable bar and dismissed the plaintiff's challenges to Tennessee's method of execution. *Sutton v. Parker*, No. 3:19-CV-00005, 2019 WL 4220896 (M.D. Tenn. Sept. 5, 2019), *appeal docketed*, No. 19-6135 (6th Cir. Oct. 7, 2019).

"Congress has dictated that state court judicial proceedings 'shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.'" *Id.* at *6 (quoting 28 U.S.C. § 1738). Under this statutory requirement, "Congress has specifically required all federal courts to give preclusive

effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so," including in Section 1983 cases. *Allen v. McCurry*, 449 U.S. 90, 96, 98–99 (1980) (traditional preclusion doctrines apply to Section 1983 actions). Thus, Tennessee law governs the res judicata effect of the state court's judgment in *Abdur'Rahman*.

The doctrine of res judicata "bars a second suit between the same parties or their privies on the same claim with respect to all issues which were, or could have been, litigated in the former suit." *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012) (citing *Creech v. Addington*, 281 S.W.3d 363, 376 (Tenn. 2009)). Res judicata "promotes finality in litigation, prevents inconsistent or contradictory judgments, conserves judicial resources, and protects litigants from the cost and vexation of multiple lawsuits." *Id.* One relevant limitation of this doctrine is that it "extends only to the facts in issue as they existed at the time the judgment was rendered." *Sutton*, 2019 WL 4220896, at *12 (quoting *Creech*, 281 S.W.3d at 381). Thus, res judicata does not bar litigation when there are "new facts" that "alter the legal rights or relations of the litigants." *Id.* (quoting *Creech*, 281 S.W.3d at 381).

To prevail on a res judicata defense, a party must establish (1) that a court of competent jurisdiction rendered the underlying judgment, (2) that both suits shared the same parties or their privies, (3) that both suits involved the same cause of action, and (4) that the underlying judgment was final and on the merits. *See Jackson*, 387 S.W.3d at 491. Each of these criteria is satisfied here.

*First*, the underlying judgment in *Abdur'Rahman* was rendered by the Davidson County Chancery Court, a court of competent jurisdiction in Tennessee. Tenn. Code Ann. §§ 16-11-101 to -115.

*Second*, this action involves the "same parties" as the *Abdur'Rahman* action. Plaintiff was one of the named plaintiffs in *Abdur'Rahman*. 558 S.W.3d at 612 n.6. And Defendants here—the TDOC Commissioner and the Warden of Riverbend Maximum Security Institution, in their official capacities—were also named defendants in *Abdur'Rahman*. *Id.* at 612 n.7.

*Third*, one of the claims adjudicated in *Abdur'Rahman* was an Eighth Amendment lethal injection claim. To satisfy the same-cause-of-action requirement, "the causes of action raised need not be identical." *Rainbow Ridge Resort, LLC v. Branch Banking & Trust Co.*, 525 S.W.3d 252, 263 (Tenn. Ct. App. 2016). But here, the causes of action are identical. In *Abdur'Rahman*, the plaintiffs asserted that "Tennessee's current three-drug lethal injection protocol, on its face, violates constitutional prohibitions against cruel and unusual punishment." 558 S.W.3d at 614. In this case, Plaintiff challenges the exact same three-drug protocol under the Eighth Amendment. (D.E. 1, PageID# 55–56.) Thus, this Complaint is barred by res judicata.

Plaintiff seemingly attempts to avoid the application of res judicata by alleging the following changes in the availability of pentobarbital: (1) that "[s]tates have executed inmates with pentobarbital as recently as December 11, 2019"; (2) that as of 2019, the federal government has procured the active pharmaceutical ingredient in pentobarbital from a domestic bulk manufacturer for use in federal executions; and (3) that, due to a recent opinion from the Office of Legal Counsel, pentobarbital is now available for importation from foreign sources. (D. E. 1, PageID# 47–50.) The first two factual allegations are immaterial because other states were already using pentobarbital to carry out executions when the *Abdur'Rahman* court decided pentobarbital was not available to Tennessee. 558 S.W.3d at 623. The fact that states continue to use pentobarbital and the federal government also intends to use pentobarbital does not mean the drug is available to Tennessee. *See In re Ohio Execution Protocol*, 860 F.3d 881, 891 (6th Cir. 2017) (finding that

even though "other states have been reported to have obtained compounded pentobarbital for use in executions," it did not mean "that any given state [could] actually locate those pharmacies and readily obtain the drugs"). The third factual allegation is immaterial because, as this Court explained in *Sutton*, "OLC opinions are advisory and do not have the effect of law"[2] and "this Opinion directly conflicts with the 2013 holding by the United States Court of Appeals for the District of Columbia that the [Food and Drug Administration's ("FDA's")] failure to regulate the importation of a foreign lethal injection chemical violated the Food, Drug, and Cosmetic Act." 2019 WL 4220896, at *19 (citing *Cook v. Food & Drug Admin.*, 733 F.3d 1, 11, 12 (D.C. Cir. 2013)).

Furthermore, even if the FDA were suddenly to stop regulating the importation of pentobarbital, it does not follow that Tennessee would be able to obtain it. It is no secret that anti-death-penalty advocates exert pressure on manufacturers of lethal injection drugs and frequently are successful in persuading them to stop supplying the drugs to state correctional departments. *See Glossip*, 135 S. Ct. at 2733. Foreign manufacturers are not immune from these pressure tactics. When "the sole American manufacturer of sodium thiopental" ceased domestic production of the drug and "planned to resume production in Italy," activists successfully "pressured both the company and the Italian Government" to stop selling it for use in executions. *Id.* "Anti-death-penalty advocates" also "lobbied the Danish manufacturer of [pentobarbital] to stop selling it for use in executions." *Id.* If foreign manufacturers become a plausible source of pentobarbital for states in the wake of the OLC opinion, it stands to reason that anti-death-penalty advocates will

---

[2] To be sure, the OLC considers its formal written opinions binding on executive branch agencies. *See, e.g., Citizens for Responsibility and Ethics in Wash. v. U.S. Dep't of Justice*, 922 F.3d 480, 484 (D.C. Cir. 2019). But OLC opinions do not bind courts; instead, they are "entitled to only as much weight as the force of their reasoning will support." *Comm. on Judiciary, U.S. House of Representatives v. Miers*, 558 F. Supp. 2d 53, 105 (D.D.C. 2008).

renew their efforts to cut off that source as well. In short, the OLC opinion does not make pentobarbital available to Tennessee for use in executions. Thus, none of Plaintiff's allegations are factual developments that could overcome the barrier of res judicata.

*Fourth*, the underlying judgment in the *Abdur'Rahman* action was on the merits and is now final. The Tennessee Supreme Court affirmed the chancery court's judgment on October 8, 2018, *Abdur'Rahman*, 558 S.W.3d at 617–18, and its mandate issued on October 19, 2018, *see Abdur'Rahman v. Parker*, No. M2018-01835-SC-RDO-CV (Tenn. Oct. 19, 2018).

Res judicata ensures an end to litigation once a cause of action has been litigated. The *Abdur'Rahman* plaintiffs, including Plaintiff herein, received extensive process in chancery court and an opportunity to make a complete record on their claims. They presented proof during the ten-day state-court trial, including four expert witnesses and twelve lay witnesses. *Abdur'Rahman*, 558 S.W.3d at 612. During appellate proceedings, they were heard through counsel and in writing by an impartial tribunal. The Tennessee Supreme Court considered separate briefs filed by two sets of plaintiffs and expanded the time for oral argument. *Id*. at 614–15, 618–19. Thus, as this Court held in *Sutton*, the *Abdur'Rahman* plaintiffs received a full and fair opportunity to litigate their cause of action challenging Tennessee's execution protocol in state court, and res judicata bars Plaintiff's attempt to get a second bite at the apple in this Court. Thus, Count I should be dismissed.

### C. Plaintiff's Eighth Amendment Lethal Injection Protocol Claim (Count I) Fails on the Merits.

Count I should be dismissed because the Sixth Circuit has already determined that an essentially identical version of the three-drug protocol does not violate the Eighth Amendment. In order to bring a successful Eighth Amendment challenge to the three-drug protocol, Plaintiff must prove (1) that there is a substantial risk the state's chosen method will cause imminent danger of

serious illness and needless suffering *and* (2) that there is an alternative method of execution that is "feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain." *Glossip*, 135 S. Ct. at 2737 (quoting *Baze*, 553 U.S. at 52). If Plaintiff cannot meet "his 'heavy burden to show that' the state's chosen method of execution will cause serious pain that the inmate 'is sure or very likely to be conscious enough to experience,'" he has not met the first requirement set forth in *Baze* and *Glossip*, and the Court need not reach the question of alternative methods. *In re Ohio Execution Protocol Litig.* (*Henness v. DeWine*), No. 19-3064, 2019 WL 6873693, at *2 (6th Cir. Dec. 17, 2019) (quoting *Campbell v. Kasich*, 881 F.3d 447, 450 (6th Cir. 2018)).

Recently, in *Henness v. DeWine*, the Sixth Circuit considered whether Ohio's three-drug protocol, which is essentially identical to Tennessee's, violated the Eighth Amendment. *Id.* at *1. The Sixth Circuit held that the evidence presented by Henness, an Ohio death-sentenced inmate, concerning the effects of a 500-milligram dose of midazolam (the same dose that Tennessee uses) was insufficient as a manner of law to satisfy the first requirement of *Baze* and *Glossip*. *Id.* at *1– 3. The district court had held that Henness satisfied the first requirement by presenting evidence that midazolam causes pulmonary edema and "could not suppress Henness's consciousness deeply enough to prevent him from experiencing" the pain from pulmonary edema or from "the combination of the paralytic agent and potassium chloride." *Id.* at *2. The Sixth Circuit disagreed, holding that the "relevant inquiry is whether an inmate injected with 500 milligrams of midazolam would subjectively experience unconstitutionally severe pain" and concluding that Henness had failed to prove that this inquiry "should be answered in his favor." *Id.* The Sixth Circuit noted that "it is immaterial whether the inmate will experience *some* pain"—to be "constitutionally cognizable," the pain must be "severe." *Id.*; *see also Bucklew v. Precythe*, 139 S. Ct. 1112, 1124

(2019) ("[W]hat unites the punishments the Eighth Amendment was understood to forbid, and distinguishes them from those it was understood to allow, is that the former were long disused (unusual) forms of punishment that intensified the sentence of death with a (cruel) 'superadd[ition]' of 'terror, pain, or disgrace.'" (quoting *Baze*, 553 U.S. at 48)).[3]

Plaintiff herein likewise alleges that under the three-drug protocol there is an imminent risk he "will experience severe pain and unnecessary suffering due to pulmonary edema resulting from the dose of 500 mg midazolam, from suffocation and terror of paralysis from the vecuronium bromide, and from the searing pain of the potassium chloride." (D.E. 1, PageID# 56.) Because Plaintiff's allegations regarding the effects of the three-drug protocol are no different from the evidence presented by Henness, the Sixth Circuit's decision in *Henness* forecloses this Eighth Amendment claim as a matter of law. Thus, Count I should be dismissed.

> **D.  Plaintiff's Eighth Amendment Dignity and Decency Claims (Counts III, IV) Fail Because the Eighth Amendment Does Not Provide a Separate Bases of Relief on These Grounds.**

Plaintiff alleges that execution by electrocution violates the "dignity of man standard" and "evolving standards of decency" contained in the Eighth Amendment. (D.E. 1, PageID# 54–55). Even if Plaintiff's Eighth Amendment Electrocution claims were ripe, they would be insufficient to state a claim on which relief could be granted. While the concepts of dignity and evolving standards of decency are implicit in the Eighth Amendment, they are not separate causes of action—instead, they are part of the analysis of whether a criminal sentence imposes a cruel and unusual punishment. *See, e.g.*, *Atkins v. Virginia*, 536 U.S. 304, 311–12 (2002) (reviewing the concepts of "the dignity of man" and "evolving standards of decency" as part of the analysis of

---

[3] Relying on *Bucklew*, the *Henness* Court also noted that, to be unconstitutional, a method of execution must pose a risk of pain that exceeds the pain associated with hanging. *Henness*, 2019 WL 6873693, at *2.

whether it was cruel and unusual punishment to execute mentally disabled individuals). Indeed, this is the context in which these concepts are analyzed in the very cases that Plaintiff cites in his Complaint. *See Glass v. Louisiana*, 471 U.S. 1080, 1080–81 (1985) (Brennan, J., dissenting) (analyzing whether execution by electrocution is a cruel and unusual punishment); *Gregg v. Georgia*, 428 U.S. 153, 162 (1976) (analyzing whether it was cruel and unusual punishment to impose a death penalty under Georgia's statutory scheme); *State v. Mata*, 745 N.W.2d 229, 261 (Neb. 2008) (analyzing whether electrocution imposes a cruel and unusual punishment); *Dawson v. State*, 554 S.E.2d 137, 144 (Ga. 2001) (analyzing whether electrocution imposes a cruel and unusual punishment under the Georgia Constitution). Thus, Counts III and IV fail to allege stand-alone, independent causes of action and should be dismissed for failure to state a claim upon which relief can be granted.

### E. Plaintiff's Complaint Fails to Sufficiently Allege How His First Alternative, Nitrogen Hypoxia, Is Available and Readily Implemented.

Plaintiff's six short sentences about nitrogen hypoxia fall well short of the applicable pleading requirements. "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8 (a), (a)(2). As discussed, to survive a motion to dismiss, the complaint must contain enough facts to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). In *Bucklew v. Precythe*, when affirming the trial court's decision to grant summary judgment to the state, the Supreme Court noted several "essential questions" that a death row inmate must answer in order to show that nitrogen hypoxia was available as a "readily implemented" alternative to a state's existing method of execution—questions like "how nitrogen gas should be administered," "in what concentration," "how quickly and for how long it should be introduced," and "how the State might ensure the safety of the

14

execution team, including protecting them against the risk of gas leaks." 139 S. Ct. at 1129. The Complaint does not allege answers to a single one of the questions raised in *Bucklew*. Instead, it relies on the conclusory statement that "[e]xecution by nitrogen hypoxia is feasible, readily implemented, and significantly reduces the substantial risk of severe pain presented by Tennessee's current three-drug protocol." (D.E. 1, PageID# 47.) Thus, the Complaint does not allege sufficient facts to state a plausible claim that execution by nitrogen hypoxia is an available, readily implemented alternative to the three-drug protocol.

## CONCLUSION

For these reasons, Plaintiff's Complaint should be dismissed in its entirety.

Respectfully submitted,

HERBERT H. SLATERY III
Attorney General and Reporter

s/ *Scott C. Sutherland*
SCOTT C. SUTHERLAND
Deputy Attorney General
B.P.R. No. 29013
Scott.Sutherland@ag.tn.gov

s/ *Rob Mitchell*
ROB MITCHELL
Assistant Attorney General
B.P.R. No. 32266
Robert.Mitchell@ag.tn.gov

s/ *Charlotte M. Davis*
CHARLOTTE M. DAVIS
Assistant Attorney General
B.P.R. No. 34204
Charlotte.Davis@ag.tn.gov

s/ *Miranda Jones*
MIRANDA JONES
Assistant Attorney General
B.P.R. No. 36070

Miranda.Jones@ag.tn.gov

Office of the Attorney General
and Reporter
Law Enforcement and
Special Prosecutions Div.
P.O. Box 20207
Nashville, Tennessee 37202-0207
Off. (615) 532-7688
Fax (615) 532-3926

**CERTIFICATE OF SERVICE**

I certify that on the 9th day of January 2020, a copy of the foregoing Memorandum of Law in Support of Defendants' Motion to Dismiss was filed and served by operation of the Court's ECF/PACER system on the following counsel for Plaintiff: Kelly Henry, Supervisory Asst. Federal Community Defender, 810 Broadway, Suite 200, Nashville, TN 37203.

s/ *Scott C. Sutherland*
SCOTT C. SUTHERLAND
Deputy Attorney General