IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| **DONALD MIDDLEBROOKS,** ) | |
| ) | |
| **Plaintiff,** ) | **CAPITAL CASE** |
| ) | |
| v. ) | No. 3:19-cv-01139 |
| ) | |
| **TONY PARKER, in his official capacity** ) | **JUDGE CAMPBELL** |
| **as Tennessee's Commissioner of** ) | |
| **Correction,** ) | |
| ) | |
| **TONY MAYS, in his official capacity as** ) | |
| **Warden of Riverbend Maximum Security** ) | |
| **Institution,** ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendants—Tony Parker, Commissioner of the Tennessee Department of Correction ("TDOC"), and Tony Mays, Warden of Riverbend Maximum Security Institution—move under Fed. R. Civ. P. 12(b)(6) and Local Rule 7.01 to dismiss Plaintiff's First Amended Complaint for failure to state a claim upon which relief can be granted.

### PROCEDURAL BACKGROUND

Plaintiff was convicted of first-degree murder and sentenced to death for participating in the torture and killing of a fourteen-year-old boy. *State v. Middlebrooks*, 840 S.W.2d 317, 324 (Tenn. 1992), *cert. dismissed*, 510 U.S. 124 (1993).[1] Over the course of three and a half hours,

---

[1] *See also Middlebrooks v. State*, No. M2001-01865-CCA-R3-PD, 2003 WL 61244, at *1 (Tenn. Crim. App. Jan. 9, 2003) (affirming denial of post-conviction relief); *Middlebrooks v. Carpenter*,

Plaintiff and two companions beat the child with brass knuckles and a switch, urinated in his mouth, burned him with a cigarette lighter, forced a stick into his anus, and slashed open his chest and wrist, before ultimately stabbing him to death. *Id.* at 324–25. Plaintiff now seeks to prevent the State of Tennessee from carrying out his sentence of death by challenging Tennessee's method of executing death-sentenced inmates.

Tennessee's primary method of execution is lethal injection.[2] Tenn. Code Ann. § 40-23-114. TDOC is the agency responsible for adopting the rules and regulations necessary to carry out death sentences. *Id.* § 40-23-114(c). The shifting availability of lethal-injection chemicals has forced TDOC to change its lethal injection procedures several times in the past decade. Prior to 2013, TDOC used a three-drug protocol of sodium thiopental, pancuronium bromide, and potassium chloride. *Workman v. Bredesen*, 486 F.3d 896, 902 (6th Cir. 2007). When sodium thiopental became unavailable, TDOC changed to a single-drug protocol using pentobarbital. *West v. Schofield*, 519 S.W.3d 550, 552 (Tenn. 2017), *cert. denied sub nom. West v. Parker*, 138 S. Ct. 476 (2017), and *cert. denied sub nom. Abdur'Rahman v. Parker*, 138 S. Ct. 647 (2018). When pentobarbital became unavailable, TDOC had to revise the protocol again, adopting a new three-drug protocol using midazolam (a sedative in the benzodiazepine family of drugs) followed by vecuronium bromide (a paralytic agent) and potassium chloride (a heart-stopping agent). *Abdur'Rahman v. Parker*, 558 S.W.3d 606, 611, 616 (Tenn.), *cert. denied sub nom. Zagorski v. Parker*, 139 S. Ct. 11 (2018), and *cert. denied sub nom. Miller v. Parker*, 139 S. Ct. 626 (2018),

---

843 F.3d 1127 (6th Cir. 2016) (affirming denial of federal habeas relief), *cert denied sub nom. Middlebrooks v. Mays*, 138 S.Ct. 503 (2017).

[2] If lethal injection is held unconstitutional or lethal-injection chemicals are unavailable, then the method of execution shifts to electrocution. Tenn. Code Ann. § 40-23-114(e). Persons sentenced to death for offenses committed prior to 1999 may also choose to be executed by electrocution. *Id.* § 40-23-114(b).

*and cert. denied*, 139 S. Ct. 1533 (2019). On January 8, 2018, TDOC adopted this three-drug protocol as an alternative to the single-drug pentobarbital protocol, and on July 5, 2018, TDOC revised the protocol to make the three-drug protocol "the exclusive method of execution by lethal injection in Tennessee." *Id.* at 611–12.

Plaintiff herein previously challenged the constitutionality of the current three-drug protocol. In *Abdur'Rahman v. Parker*, Plaintiff joined thirty-two other death row inmates in a constitutional challenge to the three-drug protocol. *Id*. at 612 n.6. They alleged, among other claims, that "the current three-drug lethal injection protocol, on its face, violates the constitutional prohibitions against cruel and unusual punishment." *Id.* at 614. As an alternative to the State's three-drug protocol, the plaintiffs proposed TDOC readopt the single-drug pentobarbital protocol. *Id.* at 12. The trial court dismissed the complaint, finding that the plaintiffs failed to prove, as required by *Baze v. Rees*, 553 U.S. 35 (2008) and *Glossip v. Gross*, 135 S. Ct. 2726 (2015), "that an available alternative method of execution exists." *Abdur'Rahman*, 558 S.W.3d at 613. And, although it did not need to reach the issue, the trial court also found that "the [p]laintiffs failed to prove the other essential element [in *Baze* and *Glossip*]—that the three-drug protocol creates a demonstrated risk of severe pain." *Id.* The Tennessee Supreme Court affirmed the trial court's judgment on the first ground and, thus, did not reach the second ground, finding that because "the [p]laintiffs failed to carry their burden of showing availability of their proposed alternative method of execution," they "failed to establish that Tennessee's current three-drug lethal injection protocol constitutes cruel and unusual punishment." *Id.* at 626.

Plaintiff filed the initial Complaint in this case on December 18, 2019, over a year after the decision in *Abdur'Rahman*. In Count 1, Plaintiff again alleged, under 42 U.S.C. § 1983, that TDOC's most recent three-drug lethal injection protocol constitutes cruel and unusual punishment,

3

violating the Eighth and Fourteenth Amendments. (D.E. 1, PageID# 55–56.) As alternatives to the three-drug protocol, Plaintiff proposed that TDOC use either nitrogen gas or pentobarbital to execute him. (D.E.1, PageID# 46–51.) He also alleged, in Counts 2, 3, and 4, that execution by electrocution violated the Eighth Amendment by creating a substantial risk of unnecessary pain as applied to him, violating the dignity of man, and violating evolving standards of decency. (D.E. 1, PageID# 52–56.) Plaintiff sought injunctive relief, declaratory relief, attorneys' fees, and the cost of the suit. (D.E. 1, PageID# 4.)

On January 8, 2020, this Court filed a memorandum and order dismissing Counts 2, 3, and 4 as unripe. (D.E. 6, PageID# 104–08.) Plaintiff then filed the instant First Amended Complaint on January 28, 2020. (D.E. 13.) Like the initial Complaint, Count 1 of the First Amended Complaint again brings a facial challenge to the constitutionality of Tennessee's three-drug protocol. (D.E. 13, PageID# 195–97.) However, at Count 2, Plaintiff now alleges that the three-drug protocol violates the Eighth Amendment by creating a substantial risk of unnecessary pain as applied to him. (D.E. 13, PageID# 197–98.)[3] Plaintiff's proposed alternatives and requests for relief are identical to those contained in the initial Complaint. (D.E. 13, PageID# 150, 175–195.) As set out below, the First Amended Complaint fails to state a claim upon which relief can be granted and should be dismissed.

---

[3] One other difference between the initial Complaint and the First Amended Complaint is Section V. D. in which Plaintiff describes the execution of Donnie Johnson and alleges that TDOC has had difficulties procuring and preparing the lethal injection chemicals used in the three-drug protocol. (D.E. 13, PageID# 165–75.) These factual allegations are irrelevant to Plaintiff's facial challenge to the constitutionality of the three-drug protocol as written. *See generally West v. Schofield*, 460 S.W.3d 113, 126 (Tenn. 2015) (noting that discovery related to a state's ability "to apply [a lethal injection] Protocol" is "not relevant to a determination of whether the Protocol passes constitutional muster"). These allegations are also irrelevant to Plaintiff's as-applied challenge, which depends entirely on facts about Plaintiff's unique physical characteristics.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), this Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." The purpose of Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). When considering a Rule 12(b)(6) motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept [the plaintiff's] allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). To survive a Rule 12(b)(6) motion to dismiss, a complaint must raise more than a "possibility that a defendant has acted unlawfully"; there must be sufficient factual allegations to render the claim facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Wesley*, 779 F.3d at 429. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Although a court generally is limited to the pleadings when considering a Rule 12(b)(6) motion, it may "take judicial notice of other court proceedings without converting the motion into one for summary judgment." *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010).

## ARGUMENT

**I.  The First Amended Complaint Should Be Dismissed Because It Is Time Barred by the Statute of Limitations.**

Plaintiff's complaint challenging the constitutionality of Tennessee's three-drug protocol is time barred by the applicable statute of limitations. "The statute of limitations applicable to a § 1983 action is the state statute of limitations applicable to personal injury actions under the law of

the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). In Tennessee, actions under 42 U.S.C. § 1983 are restricted by Tenn. Code Ann. § 28-3-104(a), which is "Tennessee's one-year statute of limitations for civil rights claims." *Thomas v. Copeland*, 758 F. App'x 377, 380 (6th Cir. 2018). Although the applicable time period is borrowed from state law, "[t]he date on which the statute of limitations begins to run in a § 1983 action is a question of federal law." *Eidson*, 510 F.3d at 635. Under federal law, the statute of limitations is triggered when a plaintiff "knows or has reason to know of the injury" giving rise to the plaintiff's cause of action. *Thomas*, 758 F. App'x at 181 (quoting *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)).

For death penalty protocol challenges, depending on which occurs later, the statute of limitations "begins to run either 1) upon the conclusion of direct review in the state court or the expiration of time for seeking such review, or 2) when the particular method of execution is adopted by the state." *Irick v. Ray*, 628 F.3d 787, 789 (6th Cir. 2010). Alterations to the protocol will not reset the statute of limitations deadline unless the modifications would increase suffering. *Getsy v. Strickland*, 577 F.3d 309, 313 (6th Cir. 2009). Nor will the "accrual date . . . reset to the date of any new piece of evidence" if the evidence merely supports "a preexisting claim." *Irick*, 628 F.3d at 789.

According to this Court's calculations in *Sutton v. Parker* and *West v. Parker*, two recent and similar cases that were also brought by *Abdur'Rahman* plaintiffs, the statute of limitations for Plaintiff's cause of action began to run on January 8, 2018, when TDOC first adopted the current three-drug protocol. *See Sutton v. Parker*, No. 3:19-CV-00005, 2019 WL 4220896, at *5, *7–9 (M.D. Tenn. Sept. 5, 2019) (finding that "the 'July 5, 2018 revision to the January 8, 2018 Lethal Injection Execution Manual did not constitute a substantial change to which new causes of action

accrued'" (quoting Memorandum and Order Denying Motion at 4, *Abdur'Rahman, et al. v. Parker*, No. 18-183-II(III) (Davidson Chancery Jul. 26, 2018))), *aff'd*, No. 19-6135, 2020 WL 504861 (6th Cir. Jan. 31, 2020); *West v. Parker*, No. 3:19-CV-00006, 2019 WL 2341406, at *6, *9–10 (M.D. Tenn. June 3, 2019) (same), *aff'd*, 783 F. App'x 506, 514 (6th Cir.), *cert. denied*, 140 S. Ct. 25 (2019). The one-year period ended on January 8, 2019. Plaintiff filed his initial Complaint on December 18, 2019, nearly a year after the deadline. Thus, Plaintiff is time barred from bringing this lawsuit, and the First Amended Complaint should be dismissed.

## II. The First Amended Complaint Should Be Dismissed Because It Is Barred by Res Judicata.

This Complaint should be dismissed because it is barred by the res judicata effect of the state court's judgment in *Abdur'Rahman*, which rejected constitutional challenges to the very same three-drug protocol that is challenged here. In fact, in *Sutton* and *West*, this Court held that the res judicata effect of *Abdur'Rahman* was an unavoidable bar and dismissed the plaintiffs' challenges to Tennessee's method of execution. *Sutton*, 2019 WL 4220896, at *17–19; *West*, 2019 WL 2341406, at *17–18. The Sixth Circuit affirmed this Court's dismissal of both cases. *Sutton*, 2020 WL 504861, at *4; *West*, 783 F. App'x at 512–15.

"Congress has dictated that state court judicial proceedings 'shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.'" *Sutton*, 2019 WL 4220896, at *6 (quoting 28 U.S.C. § 1738). Under this statutory requirement, "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so," including in Section 1983 cases. *Allen v. McCurry*, 449 U.S. 90, 96, 98–99 (1980) (finding that traditional preclusion doctrines apply to Section 1983 actions).

Thus, Tennessee law governs the res judicata effect of the state court's judgment in *Abdur'Rahman*.

The doctrine of res judicata "bars a second suit between the same parties or their privies on the same claim with respect to all issues which were, or could have been, litigated in the former suit." *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012) (citing *Creech v. Addington*, 281 S.W.3d 363, 376 (Tenn. 2009)). Res judicata "promotes finality in litigation, prevents inconsistent or contradictory judgments, conserves judicial resources, and protects litigants from the cost and vexation of multiple lawsuits." *Id.* One relevant limitation of this doctrine is that it "extends only to the facts in issue as they existed at the time the judgment was rendered." *Sutton*, 2019 WL 4220896, at *12 (quoting *Creech*, 281 S.W.3d at 381). Thus, res judicata does not bar litigation when there are "new facts" that "alter the legal rights or relations of the litigants." *Id.* (quoting *Creech*, 281 S.W.3d at 381).

To prevail on a res judicata defense, a party must establish (1) that a court of competent jurisdiction rendered the underlying judgment, (2) that both suits shared the same parties or their privies, (3) that both suits involved the same cause of action, and (4) that the underlying judgment was final and on the merits. *See Jackson*, 387 S.W.3d at 491. Each of these criteria is satisfied here.

*First*, the underlying judgment in *Abdur'Rahman* was rendered by the Davidson County Chancery Court, a court of competent jurisdiction in Tennessee. *See* Tenn. Code Ann. §§ 16-11-101 to -115.

*Second*, this action involves the "same parties" as the *Abdur'Rahman* action. Plaintiff was one of the named plaintiffs in *Abdur'Rahman*. 558 S.W.3d at 612 n.6. And Defendants here—

the TDOC Commissioner and the Warden of Riverbend Maximum Security Institution, in their official capacities—were also named defendants in *Abdur'Rahman*. *Id.* at 612 n.7.

*Third*, the two claims in this Complaint were or could have been adjudicated in *Abdur'Rahman*. To satisfy the same-cause-of-action requirement, "the causes of action raised need not be identical," as long as the claims involve "*issues which were, or could have been, litigated in the former suit*." *Rainbow Ridge Resort, LLC v. Branch Banking & Trust Co.*, 525 S.W.3d 252, 263 (Tenn. Ct. App. 2016) (quoting *Jackson*, 387 S.W.3d at 491). In *Abdur'Rahman*, the plaintiffs asserted that "Tennessee's current three-drug lethal injection protocol, on its face, violates constitutional prohibitions against cruel and unusual punishment." 558 S.W.3d at 614. In Count 1, Plaintiff brings a facial challenge to the exact same three-drug protocol under the Eighth Amendment. With respect to Count 2, Plaintiff's as-applied challenge to the three-drug protocol, this Court has previously held that the *Abdur'Rahman* plaintiffs could have brought as-applied challenges in *Abdur'Rahman*. *See Sutton*, 2019 WL 4220896, at *17 n.6 (finding that the plaintiff "could have litigated his as-applied claims in [*Abdur'Rahman*] if he had included them in the original state-court complaint or a timely motion to amend"); *West*, 2019 WL 2341406, at *17 n.8 (same). Furthermore, Plaintiff does not argue that his as-applied challenge to the three-drug protocol involves facts not in existence during *Abdur'Rahman*. Rather, he concedes that his seizure disorder has been "long-standing." (D.E. 13, PageID# 156.). Thus, Counts 1 and 2 satisfy the same-cause-of-action requirement.

Plaintiff seemingly attempts to avoid the application of res judicata by alleging the following changes in the availability of pentobarbital: (1) that "[s]tates have executed inmates with pentobarbital as recently as December 11, 2019"; (2) that as of 2019, the federal government has procured the active pharmaceutical ingredient in pentobarbital from a domestic bulk manufacturer

for use in federal executions; and (3) that, due to a recent opinion from the Office of Legal Counsel, pentobarbital is now available for importation from foreign sources. (D. E. 1, PageID# 47–50.) The first two factual allegations are immaterial because other states were already using pentobarbital to carry out executions when the *Abdur'Rahman* court decided pentobarbital was not available to Tennessee. 558 S.W.3d at 623. The fact that states continue to use pentobarbital and the federal government also intends to use pentobarbital does not mean the drug is available to Tennessee. *See In re Ohio Execution Protocol*, 860 F.3d 881, 891 (6th Cir. 2017) (finding that even though "other states have been reported to have obtained compounded pentobarbital for use in executions," it did not mean "that any given state [could] actually locate those pharmacies and readily obtain the drugs"). The third factual allegation is immaterial because, as this Court explained in *Sutton*, "OLC opinions are advisory and do not have the effect of law."[4] 2019 WL 4220896, at *19. And, as the Sixth Circuit noted when affirming this Court's *Sutton* decision, "a 2012 injunction affirmed by the U.S. Court of Appeals for the District of Columbia Circuit that required the [Food and Drug Administration ("FDA")] to block the importation of another lethal-injection drug, sodium thiopental, remains in significant tension with the OLC opinion." 2020 WL 504861, at *4 (citing *Beaty v. FDA*., 853 F. Supp. 2d 30 (D.D.C. 2012), *aff'd sub nom*. *Cook v. FDA*., 733 F.3d 1 (D.C. Cir. 2013)). Consequently, "[t]here is no basis to conclude that the OLC opinion lifts the injunction or will enhance Tennessee's ability to procure pentobarbital for use in executions in the immediate future." *Id.*

---

[4] To be sure, the OLC considers its formal written opinions binding on executive branch agencies. *See, e.g., Citizens for Responsibility and Ethics in Wash. v. U.S. Dep't of Justice*, 922 F.3d 480, 484 (D.C. Cir. 2019). But OLC opinions do not bind courts; instead, they are "entitled to only as much weight as the force of their reasoning will support." *Comm. on Judiciary, U.S. House of Representatives v. Miers*, 558 F. Supp. 2d 53, 105 (D.D.C. 2008).

Furthermore, even if the FDA were suddenly to stop regulating the importation of lethal injection chemicals, it does not follow that Tennessee would be able to obtain it through "ordinary transactional effort." *Id.* (quoting *In re Ohio*, 860 F.3d at 891). It is no secret that anti-death-penalty advocates exert pressure on manufacturers of lethal injection drugs and frequently are successful in persuading them to stop supplying the drugs to state correctional departments. *See Glossip*, 135 S. Ct. at 2733. Foreign manufacturers are not immune from these pressure tactics. When "the sole American manufacturer of sodium thiopental" ceased domestic production of the drug and "planned to resume production in Italy," activists successfully "pressured both the company and the Italian Government" to stop selling it for use in executions. *Id.* "Anti-death-penalty advocates" also "lobbied the Danish manufacturer of [pentobarbital] to stop selling it for use in executions." *Id.* If foreign manufacturers become a plausible source of pentobarbital for states in the wake of the OLC opinion, it stands to reason that anti-death-penalty advocates will renew their efforts to cut off that source as well. In short, as the Sixth Circuit held in *Sutton*, the OLC opinion does not establish that pentobarbital is available to Tennessee for use in executions. 2020 WL 504861, at *4 (noting that the availability of pentobarbital from international sources "would not ensure that it will be made available for use in executions in Tennessee"). Thus, none of Plaintiff's allegations are factual developments that could overcome the barrier of res judicata.

*Fourth*, the underlying judgment in the *Abdur'Rahman* action was on the merits and is now final. The Tennessee Supreme Court affirmed the chancery court's judgment on October 8, 2018, *Abdur'Rahman*, 558 S.W.3d at 617–18, and its mandate issued on October 19, 2018, *see Abdur'Rahman v. Parker*, No. M2018-01835-SC-RDO-CV (Tenn. Oct. 19, 2018).

Res judicata ensures an end to litigation once a cause of action has been litigated. The *Abdur'Rahman* plaintiffs, including Plaintiff herein, received extensive process in chancery court

and an opportunity to make a complete record on their claims. They presented proof during the ten-day state-court trial, including four expert witnesses and twelve lay witnesses. *Abdur'Rahman*, 558 S.W.3d at 612. During appellate proceedings, they were heard through counsel and in writing by an impartial tribunal. The Tennessee Supreme Court considered separate briefs filed by two sets of plaintiffs and expanded the time for oral argument. *Id*. at 614–15, 618–19. This Court has twice held that the *Abdur'Rahman* plaintiffs received a full and fair opportunity to litigate their cause of action challenging Tennessee's execution protocol in state court, and as a result, res judicata bars Plaintiff's attempt to get a second bite at the apple in this Court. *See Sutton*, 2019 WL 4220896, at *17; *West*, 2019 WL 2341406, at *17. Thus, the First Amended Complaint should be dismissed.

### III. The Facial Challenge to the Three-Drug Protocol Should Be Dismissed Because It Fails on the Merits.

Count 1 should also be dismissed because the Sixth Circuit has already determined that an essentially identical version of the three-drug protocol does not violate the Eighth Amendment. *In re Ohio Execution Protocol Litig.* (*Henness v. DeWine*), 946 F.3d 287 (6th Cir. 2019). In order to bring a successful Eighth Amendment challenge to the three-drug protocol, Plaintiff must prove (1) that there is a substantial risk the state's chosen method will cause imminent danger of serious illness and needless suffering *and* (2) that there is an alternative method of execution that is "feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain" when compared to the state's chosen method. *Glossip*, 135 S. Ct. at 2737 (quoting *Baze*, 553 U.S. at 52). If Plaintiff cannot meet "his 'heavy burden to show that' the state's chosen method of execution will cause serious pain that the inmate 'is sure or very likely to be conscious enough to experience,'" he has not met the first requirement set forth in *Baze* and *Glossip*, and "necessarily

. . . cannot demonstrate a likelihood of success on the second." *Henness*, 946 F.3d at 289–91 (quoting *Campbell v. Kasich*, 881 F.3d 447, 450 (6th Cir. 2018)).

Recently, in *Henness v. DeWine*, the Sixth Circuit considered whether Ohio's three-drug protocol, which is essentially identical to Tennessee's, violated the Eighth Amendment. *Id.* at 288–89. The Sixth Circuit held that the evidence presented by Henness, an Ohio death-sentenced inmate, concerning the effects of a 500-milligram dose of midazolam (the same dose that Tennessee uses) was insufficient as a matter of law to satisfy the first requirement of *Baze* and *Glossip*. *Id.* at 289–91. The district court had held that Henness satisfied the first requirement by presenting evidence that midazolam causes pulmonary edema and "could not suppress Henness's consciousness deeply enough to prevent him from experiencing" the pain from pulmonary edema or from "the combination of the paralytic agent and potassium chloride." *Id.* at 290. The Sixth Circuit disagreed, holding that the "relevant inquiry is whether an inmate injected with 500 milligrams of midazolam would subjectively experience unconstitutionally severe pain" and concluding that Henness had failed to prove that this inquiry "should be answered in his favor." *Id.* The Sixth Circuit noted that "it is immaterial whether the inmate will experience *some* pain"—to be "constitutionally cognizable," the pain must be "severe." *Id.*; *see also Bucklew v. Precythe*, 139 S. Ct. 1112, 1124 (2019) ("[W]hat unites the punishments the Eighth Amendment was understood to forbid, and distinguishes them from those it was understood to allow, is that the former were long disused (unusual) forms of punishment that intensified the sentence of death with a (cruel) 'superadd[ition]' of 'terror, pain, or disgrace.'" (quoting *Baze*, 553 U.S. at 48)).[5]

---

[5] Relying on *Bucklew*, the *Henness* Court also noted that, to be unconstitutional, a method of execution must pose a risk of pain that exceeds the pain associated with hanging. *Henness*, 946 F.3d at 290.

Plaintiff herein likewise alleges that under the three-drug protocol there is an imminent risk he "will experience severe pain and unnecessary suffering due to pulmonary edema resulting from the dose of 500 mg midazolam, from suffocation and terror of paralysis from the vecuronium bromide, and from the searing pain of the potassium chloride." (D.E. 13, PageID# 197.) Because Plaintiff's allegations regarding the effects of the three-drug protocol are no different from the evidence presented by Henness, the Sixth Circuit's decision in *Henness* forecloses this Eighth Amendment claim as a matter of law. Thus, Count 1 fails to state a claim upon which relief can be granted and should be dismissed.

## CONCLUSION

For these reasons, Plaintiff's Complaint should be dismissed.

Respectfully submitted,

HERBERT H. SLATERY III
Attorney General and Reporter


s/ *Scott C. Sutherland*
SCOTT C. SUTHERLAND
Deputy Attorney General
B.P.R. No. 29013
Scott.Sutherland@ag.tn.gov

s/ *Rob Mitchell*
ROB MITCHELL
Assistant Attorney General
B.P.R. No. 32266
Robert.Mitchell@ag.tn.gov

s/ *Charlotte M. Davis*
CHARLOTTE M. DAVIS
Assistant Attorney General
B.P.R. No. 34204
Charlotte.Davis@ag.tn.gov

s/ *Miranda Jones*
MIRANDA JONES
Assistant Attorney General
B.P.R. No. 36070
Miranda.Jones@ag.tn.gov

Office of the Attorney General
and Reporter
Law Enforcement and
Special Prosecutions Div.
P.O. Box 20207
Nashville, Tennessee 37202-0207
Off. (615) 532-7688
Fax (615) 532-4892

## CERTIFICATE OF SERVICE

I certify that on the 10th day of February 2020, a copy of the foregoing Memorandum of Law in Support of Defendants' Motion to Dismiss was filed and served by operation of the Court's ECF/PACER system on the following counsel for Plaintiff: Kelly Henry, Supervisory Asst. Federal Community Defender, 810 Broadway, Suite 200, Nashville, TN 37203.

s/ *Scott C. Sutherland*
SCOTT C. SUTHERLAND
Deputy Attorney General