# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **DONALD MIDDLEBROOKS,** | ) | <u>**CAPITAL CASE**</u> |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 3:19-cv-01139** |
| | ) | |
| **TONY PARKER, et al.,** | ) | **JUDGE CAMPBELL** |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM</u>

Plaintiff, an inmate on death row in the Riverbend Maximum Security Institution in Nashville, Tennessee, filed a complaint pursuant to 42 U.S.C. § 1983 alleging, among other things, that Tennessee's default method of execution—lethal injection via a three-drug "cocktail"—constitutes cruel and unusual punishment in violation of his constitutional rights.  On initial review pursuant to the Prison Litigation Reform Act, the Court dismissed without prejudice Counts 2, 3, and 4 of the original complaint, which presented challenges to the constitutionality of electrocution that are not ripe for judicial review. (Doc. No. 6 at 4–6.)

Plaintiff then filed an amended complaint in which he asserts two Counts: (1) Tennessee's lethal-injection protocol is unconstitutional on its face ("the facial challenge"); and (2) Tennessee's lethal-injection protocol is unconstitutional as applied to Plaintiff because of his unique physical and mental conditions ("the as-applied challenge"). (Doc. No. 13.)

Defendants move to dismiss the amended complaint on three grounds: (1) that it is barred by the applicable statute of limitations; (2) that it is barred by the doctrine of res judicata; and (3) that it fails to state a claim on the merits. (Doc. No. 18; Doc. No. 19 at 5, 7, 12.)  Plaintiff has

responded in opposition to the motion, and Defendants have replied in support of it. (Doc. Nos. 23, 25.)  The matter is fully briefed and ripe for review.  For the following reasons, Defendants' motion (Doc. No. 18) will be granted, and this case will be dismissed.

## I.     LEGAL STANDARDS

For purposes of a motion to dismiss, the Court must take all the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  As a general rule, "matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under [Federal Rule of Civil Procedure] 56." *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997).  The term "pleadings" encompasses both the complaint and the answer, Fed. R. Civ. P. 7(a), and any exhibit thereto. Fed. R. Civ. P. 10(c). However, the Court of Appeals has held that "[i]n addition to the allegations in the complaint, the court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005).

Plaintiff sues under 42 U.S.C. § 1983 to vindicate alleged violations of their federal constitutional rights.  Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012).  Thus, to state a Section 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983.

2

## II. FACTS AND PROCEDURAL BACKGROUND

This Court has repeatedly described the history of Tennessee law regarding methods of execution in other recent cases brought by Plaintiffs' fellow death row inmates. *See Sutton v. Parker*, No. 3:19-CV-00005, 2019 WL 4220896, at *2 (M.D. Tenn. Sept. 5, 2019) (Richardson, J.), *aff'd*, No. 19-6135, 2020 WL 504861 (6th Cir. Jan. 31, 2020); *West v. Parker*, No. 3:19-CV-00006, 2019 WL 2341406, at *2–4 (M.D. Tenn. June 3, 2019) (Crenshaw, C.J.), *aff'd*, 783 F. App'x 506 (6th Cir. Aug. 6, 2019). In a nutshell, the presumptive method of execution is lethal injection, but inmates like Plaintiff, who are condemned for crimes they committed before January 1, 1999, can choose to be electrocuted instead by signing a written waiver. Tenn. Code Ann. § 40-23-114(a) and (b). Electrocution is also the default method of execution if lethal injection is declared unconstitutional or the TDOC Commissioner certifies that lethal injection drugs are unavailable. § 40-23-114(e). And finally, state law provides that if the method to be used is declared unconstitutional, an execution shall be carried out "by any constitutional method of execution." § 40-23-114(c).

Every lethal-injection protocol that the Tennessee Department of Correction (TDOC) has adopted over the years has been challenged by death row inmates, including the current Plaintiffs. This Court has described the history of some of those protocols and the litigation about them:

> Pursuant to every version of the statute in effect since 1998, the TDOC devised a series of protocols to carry out executions in Tennessee. As relevant to this case, the lethal injection protocols adopted in 2013, 2014, and 2015 all called for execution by a lethal dose of the barbiturate pentobarbital. *West v. Schofield*, 519 S.W.3d 550, 552 (Tenn. 2017), *cert. denied sub nom. West v. Parker*, 138 S. Ct. 476 (2017), and *cert. denied sub nom. Abdur'Rahman v. Parker*, 138 S. Ct. 647 (2018), *reh'g denied*, 138 S. Ct. 1183 (2018). A group of death row inmates including Plaintiff filed suit in state court alleging, among other things, that the pentobarbital protocol constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution by exposing them to a substantial risk of serious harm or lingering death. *Id.*, 519 S.W.3d at 563. The state courts concluded after trial that the inmates' Eighth Amendment claims failed on

3

their merits, *id.*, and the United States Supreme Court denied certiorari on January 8, 2018. *Abdur'Rahman*, 138 S. Ct. 647.

On the same day that the Supreme Court denied certiorari in the challenge to pentobarbital, TDOC revised its lethal injection protocol to provide for two alternative methods of execution: Protocol A, comprised of a lethal dose of pentobarbital; and Protocol B, comprised of a dose of midazolam, followed by vecuronium bromide, and then potassium chloride, in that order. Plaintiff and dozens of his fellow death row inmates again filed suit in state court "seeking a declaration that the new, January 8, 2018 Lethal Injection Protocol, Protocol B, violates their constitutional and statutory rights." They alleged, among other things, that the three-drug execution method constituted cruel and unusual punishment in violation of the Eighth Amendment. *Abdur'Rahman v. Parker*, 558 S.W.3d 606, 610 (Tenn. 2018).

*West*, 2019 WL 2341406, at *4–5.

The state-court plaintiffs, including Plaintiff, alleged in their second amended complaint in state court that pentobarbital was an alternative method to the three-drug protocol. *Abdur'Rahman*, 558 S.W.3d at 612, *cert. denied sub nom. Zagorski v. Parker*, 139 S. Ct. 11 (2018), and *cert. denied sub nom. Miller v. Parker*, 139 S. Ct. 626 (2018), and *cert. denied*, 139 S. Ct. 1533 (2019). In an oral motion at the close of their proof, the plaintiffs sought to add the removal of vecuronium bromide from the protocol as a second alternative method of execution. *Id.* The trial court denied that motion. *Id.* The trial court also held that Tennessee's elimination of Protocol A in its revised lethal-injection protocol announced July 5, 2018, four days before trial began, meant that the issue tried was the constitutionality of the July 5 protocol, rather than the January 8 protocol about which the plaintiffs had originally filed suit. *Id.* The court went on to rule in favor of Defendants on the plaintiffs' claims:

On July 26, 2018, two days after closing arguments, the trial court dismissed the complaint for declaratory judgment. Regarding the claims that the protocol, on its face, amounts to cruel and unusual punishment, the trial court found that the Plaintiffs failed to prove an essential element—that an available alternative method of execution exists—and, on this basis alone, their claims must be dismissed. Though not necessary for its ruling, the trial court also found that the Plaintiffs failed to prove the other essential element—that the three-drug protocol creates a demonstrated risk of severe pain. In addition, the trial court denied relief as to the

4

Plaintiffs' other constitutional claims that included substantive due process, procedural due process, and access to the courts.

*Id.* at 613.

The Tennessee Supreme Court assumed jurisdiction over the inmates' appeal and affirmed on October 8, 2018. *Abdur'Rahman v. Parker*, 558 S.W.3d 606, 613 (Tenn. 2018). The United States Supreme Court has denied at least three petitions for certiorari arising from the state court's decision. *Abdur'Rahman v. Parker*, No. 18-8332, 2019 WL 2078094 (U.S. May 13, 2019); *Miller v. Parker*, 139 S. Ct. 626 (2018) (denying certiorari and denying stay of execution); *Zagorski v. Parker*, 139 S. Ct. 11 (2018) (same).

Within weeks of the conclusion of that state court case, death row inmates began filing suit in this Court challenging Tennessee's method of execution. *See* Complaint for Injunctive Relief, *Miller, et al. v. Parker*, No. 3:18-1234 (M.D. Tenn. Nov. 2, 2018). In addition to denying preliminary injunctive relief, Memorandum and Order, *Miller, et al. v. Parker*, No. 3:18-1234 (M.D. Tenn. Nov. 15, 2018), *aff'd*, 910 F.3d 259, 260 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 399 (2018), this Court has repeatedly found the state-court plaintiffs' complaints filed in this Court to be barred by the doctrine of res judicata. *See Sutton v. Parker*, No. 3:19-CV-00005, 2019 WL 4220896 (M.D. Tenn. Sept. 5, 2019), *aff'd*, No. 19-6135, 2020 WL 504861 (6th Cir. Jan. 31, 2020); *West v. Parker*, No. 3:19-CV-00006, 2019 WL 2341406 (M.D. Tenn. June 3, 2019) (Crenshaw, C.J.), *aff'd*, 783 F. App'x 506 (6th Cir. Aug. 6, 2019), *cert. denied*, 140 S. Ct. 25 (2019). The United States Court of Appeals affirmed each of those rulings.

Plaintiff filed the instant action on December 18, 2019. (Doc. No. 1.)

### III.    ANALYSIS

Plaintiff sues Tony Parker, the Commissioner of the TDOC, in his official capacity as the official who seeks to execute Plaintiff pursuant to the current execution protocol and will oversee

the execution.  He also sues Tony Mays, the Warden of Riverbend Maximum Security Institution, in his official capacity as the official who is "directly in charge" of Plaintiff's execution. (Doc. No. 13 at 8.)  He seeks declarations that Tennessee's July 5, 2018 lethal-injection protocol is unconstitutional both facially and as applied to him and an injunction preventing Defendants from following the protocol to execute him.  (*Id.* at 10, 52.)

## A.  Res Judicata

### 1.  The Law of Res Judicata

Like the parties in *West* and *Sutton*, the parties here disagree about whether the doctrine of res judicata applies to this case in light of the state-court litigation.  Res judicata, in its narrowest sense, is "the preclusion of claims that have once been litigated or could have been litigated" in a previous lawsuit. *Hutcherson v. Lauderdale Cty., Tenn.*, 326 F.3d 747, 758 n.3 (6th Cir. 2003).  It "rests at bottom upon the ground that the party to be affected, or some other with whom he is in privity, has litigated or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction." *Richards v. Jefferson Cty., Ala.*, 517 U.S. 793, 797 n.4 (1996).

Congress has dictated that state court judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C.A. § 1738.  Accordingly, federal courts are required to apply res judicata in a manner "to give the same effect to the Tennessee state court judgment as would another Tennessee state court." *Hutcherson*, 326 F.3d at 758.  "Indeed, though the federal courts may look to the common law or to the policies supporting res judicata and collateral estoppel in assessing the preclusive effect of decisions of other federal courts, Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so[.]" *Allen v.*

*McCurry*, 449 U.S. 90, 96 (1980). This policy "not only reduce[s] unnecessary litigation and foster[s] reliance on adjudication, but also promote[s] the comity between state and federal courts that has been recognized as a bulwark of the federal system." *Id.* at 95–96.

Tennessee courts have "a long-standing tradition in upholding judgments" pursuant to res judicata. *Regions Fin. Corp. v. Marsh USA, Inc.*, 310 S.W.3d 382, 400 (Tenn. Ct. App. 2009). In rejecting a party's arguments for adopting several exceptions to res judicata, the Tennessee Court of Appeals quoted the Tennessee Supreme Court regarding the policy in favor of a strong res judicata doctrine:

> The policy rationale in support of Res Judicata is not based upon any presumption that the final judgment was right or just. Rather, it is justifiable on the broad grounds of public policy which requires an eventual end to litigation. Akin to statutes of limitations, the doctrine of Res judicata is a 'rule of rest' and 'private peace'. . ..
>
> . . . It is not material on this point whether the finding of the jury was Right or not in the former suit. That cannot be questioned any more between the same parties or their privies. Right or wrong the question was finally closed, unless a new trial had been obtained in the same suit. This rule is not alone for the benefit of the parties litigant, to put an end to strife and contention between them, and produce certainty as to individual rights, but it is also intended to give dignity and respect to judicial proceedings, and relieve society from the expense and annoyance of indeterminable litigation about the same matter.

Id. at 400–01 (quoting *Moulton v. Ford Motor Co.*, 533 S.W.2d 295, 296 (Tenn. 1976)).

Tennessee courts use the term "res judicata" broadly to include both claim preclusion, as just described, and issue preclusion (also known as collateral estoppel). *Regions Fin. Corp.*, 310 S.W.3d at 393. The Sixth Circuit has summarized the elements of the claim-preclusion type of res judicata defense in Tennessee:

> The state of Tennessee bars under res judicata "all claims that were actually litigated or could have been litigated in the first suit between the same parties." *Am. Nat'l Bank & Trust Co. of Chattanooga v. Clark*, 586 S.W.2d 825, 826 (Tenn. 1979). Four elements must be established before res judicata can be asserted as a defense: (1) the underlying judgment must have been rendered by a court of

7

competent jurisdiction; (2) the same parties were involved in both suits;[1] (3) the same cause of action was involved in both suits; and (4) the underlying judgment was on the merits. *Collins v. Greene Cty. Bank*, 916 S.W.2d 941, 945 (Tenn. Ct. App. 1995) (citing *Lee v. Hall*, 790 S.W.2d 293, 294 (Tenn. Ct. App. 1990)).

*Id.* The corollary doctrine of issue preclusion dictates that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment . . . the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *In re Bridgestone/Firestone*, 286 S.W.3d 898, 904 (Tenn. Ct. App. 2008) (quoting *Restatement (Second) of Judgments § 27* (1982)). The elements of the issue-preclusion type of Tennessee's res judicata doctrine are:

> (1) that the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding, (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded.

*Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102, 107 (Tenn. 2016).

2. <u>Arguments Applicable to Both Counts</u>

Defendants assert that Plaintiff's two remaining claims in this case—a facial challenge to the constitutionality of Tennessee's lethal-injection protocol and an as-applied challenge to the same—are both barred by the doctrine of res judicata as a result of the *Abdur'Rahman* litigation in state court and should be dismissed on that basis. (Doc. No. 18 at 7–12.) They correctly assert that the *Abdur'Rahman* case was decided by a Tennessee court of competent jurisdiction and that

---

[1] Tennessee appears not to strictly limit res judicata's application to cases involving the same parties. *See Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102, 115 n.11 (Tenn. 2016) (discussing privity). That distinction is not material to this case, however, because Plaintiff was a party to the state-court litigation.

8

Plaintiff and both Defendants were parties to that case. (*Id.* at 8–9.)  They also assert that Plaintiff's current Count 1—the facial challenge—is the same claim litigated in state court, and that Count 2—Plaintiff's as-applied challenge—could have been litigated in that same state-court case. (*Id.* at 9.)

Plaintiff does not dispute the state court's jurisdiction or the fact that he was a party to the state case.  Instead, he argues that his current claim "is a new claim, distinct from any previously adjudicated in state or federal court," because "the legal and factual landscape has changed" since the state case was decided. (Doc. No. 23 at 9.)  It is true that "[t]he doctrine of res judicata 'extends only to the facts in issue as they existed at the time the judgment was rendered, and does not prevent a re-examination of the same question between the same parties where in the interval the facts have changed or new facts have occurred which may alter the legal rights or relations of the litigants.'" *Creech v. Addington*, 281 S.W.3d 363, 381 (Tenn. 2009) (quoting *Banks v. Banks*, 77 S.W.2d 74, 76 (Tenn. Ct. App. 1934)).  The "changes in the law and facts" upon which Plaintiff relies in an attempt to circumvent res judicata on both his pending Counts are the Supreme Court's decision in *Bucklew v. Precythe*, 139 S. Ct. 1112 (2019), and a May 2019 opinion from the Department of Justice's Office of Legal Counsel (OLC) that the Food and Drug Administration lacks jurisdiction to regulate the importation of lethal injection chemicals. (Doc. No. 22 at 12, 20.)

The Supreme Court set the standards necessary to prevail on an Eighth Amendment challenge to a method of execution years ago in *Baze v. Rees*, 553 U.S. 35 (2008), and *Glossip v. Gross*, 135 S. Ct. 2726 (2015).  That *Baze-Glossip* test requires plaintiffs to show that the challenged method "is sure or very likely to cause serious pain and needless suffering" and that there is "an alternative that is feasible, readily implemented, and in fact significantly reduces a substantial risk of severe pain." *In re Ohio Execution Protocol Litig.*, 881 F.3d 447, 449 (6th Cir.)

(quoting *Glossip*, 135 S. Ct. at 2737). That is the standard implicated by and applied to Plaintiffs' latest Eighth Amendment litigation in state court. *See Abdur'Rahman v. Parker*, 558 S.W.3d 606, 616 (Tenn. 2018). The notion that *Bucklew* somehow changed that legal standard so materially that it effectively gives rise to a new cause of action independent of the Eighth Amendment claim Plaintiffs litigated in state court is belied by *Bucklew*'s own language. In that case, the Supreme Court expressly "(re)confirmed that anyone bringing a method of execution claim alleging the infliction of unconstitutionally cruel pain must meet the *Baze-Glossip* test." *Bucklew*, 139 S. Ct. at 1129 (2019). *Bucklew* did not abrogate or modify the existing standard; it merely clarified that the same standard applied to all challenges to methods of execution—both as-applied and facial. *Id.* Accordingly, even assuming for the sake of argument that an intervening change in the law pertaining to a claim could be the basis for overcoming res judicata, *contra Jackson v. Smith*, 387 S.W.3d 486, 493 (Tenn. 2012) (observing that "the general rule, recognized throughout this nation, is that a change in the law occurring after a final judgment ordinarily does not create an exception to the application of the doctrine of res judicata or claim preclusion"), Plaintiff cannot avoid the bar of res judicata by relying on *Bucklew*.

With regard to the 2019 OLC opinion, this Court has already rejected the argument that it changes the facts relevant to Tennessee inmates' Eighth Amendment claims to an extent that would overcome res judicata:

> Plaintiff raises yet another development that he contends is material to the question of whether pentobarbital is available as an alternative means of execution: a May 5, 2019, opinion from the Department of Justice's Office of Legal Counsel ("the Opinion") to the effect that the Food and Drug Administration (FDA) lacks authority to regulate the importation of lethal injection chemicals into the United States. Because the Tennessee Supreme Court ruled against Plaintiff and his fellow inmates in state court on the basis that they had failed to prove that pentobarbital was available to the TDOC, *Abdur'Rahman v. Parker*, 558 S.W.3d 606, 610, 625 (Tenn. 2018), Plaintiff argues that the Opinion materially alters the facts of the case

10

and that now "[t]here are no obstacles to Tennessee obtaining pentobarbital from overseas." Plaintiff overstates the significance of the Opinion.

As Defendants correctly point out, OLC opinions are advisory and do not have the effect of law. *Campaign for Accountability v. U.S. Dep't of Justice*, 278 F. Supp. 3d 303, 321 (D.D.C. 2017). Moreover, this Opinion directly conflicts with the 2013 holding by the United States Court of Appeals for the District of Columbia that the FDA's failure to regulate the importation of a foreign lethal injection chemical violated the Food, Drug, and Cosmetic Act. *Cook v. Food & Drug Admin.*, 733 F.3d 1, 11, 12 (D.C. Cir. 2013). Plaintiff does not point to any steps taken by the Department of Justice to lift the injunction imposed in that case, and of course the Opinion itself cannot serve that purpose or have that effect. It is almost certain, therefore, that any move by the FDA to stop regulating in this area will be met with litigation. Moreover, the Court takes judicial notice of the fact that the Congressional House Committee on Oversight and Reform has already begun an inquiry into the basis for and circumstances surrounding the Opinion. *See* https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2019-08-14.%20Raskin%20and%20Pressley%20to%20DoJ-Barr%20re.%20Death%20Penalty.pdf. (last accessed Sept. 6, 2019).

Accordingly, there is no basis to find that the Opinion has had or will have any practical effect on—i.e., somehow increase—Tennessee's ability to import pentobarbital in the near future. And, even assuming that Tennessee suddenly had the legal ability to import pentobarbital, the fact (adduced in the state-court litigation) that there are supplies of pentobarbital in other countries does not establish that there are suppliers willing to sell the chemical to Tennessee for use in executions. As the Supreme Court observed in *Glossip*, pentobarbital originally came into short supply for executions because "[a]nti-death-penalty advocates lobbied the Danish manufacturer of the drug to stop selling it" for that purpose, and the manufacturer "took steps to block the shipment of pentobarbital for use in executions in the United States." *Glossip v. Gross*, 135 S. Ct. 2726, 2733 (2015). FDA regulation is not, therefore, the only obstacle to obtaining pentobarbital from foreign nations. For all these reasons, the Opinion does not materially alter the circumstances of this case.

*Sutton*, 2019 WL 4220896, at \*19.

And less than three months ago, the Sixth Circuit affirmed that decision and explained why

the OLC opinion does not support a new claim:

The OLC opinion does not shift the regulatory landscape surrounding pentobarbital so considerably as to permit Tennessee to obtain the drug through "ordinary transactional effort," as required by *Glossip*. *In re Ohio Execution Protocol*, 860 F.3d 881, 891 (6th Cir. 2017) (en banc), *cert. denied sub nom. Otte v. Morgan*, —– U.S. ——, 137 S. Ct. 2238 (2017); *see also Abdur'Rahman*, 558 S.W.3d at 623. The OLC opinion has no legal effect upon prior injunctions issued by federal courts. *See Comm. on Judiciary, U.S. House of Representatives v. Miers*, 558 F. Supp. 2d

11

53, 104 (D.D.C. 2008). Thus, a 2012 injunction affirmed by the U.S. Court of Appeals for the District of Columbia Circuit that required the FDA to block the importation of another lethal-injection drug, sodium thiopental, remains in significant tension with the OLC opinion. *See Beaty v. FDA.*, 853 F. Supp. 2d 30 (D.D.C. 2012), *aff'd sub nom. Cook v. FDA.*, 733 F.3d 1 (D.C. Cir. 2013). There is no basis to conclude that the OLC opinion lifts the injunction or will enhance Tennessee's ability to procure pentobarbital for use in executions in the immediate future. Furthermore, even if pentobarbital may be available for sale internationally, that would not ensure that it will be made available for use in executions in Tennessee. The reason that pentobarbital became difficult to obtain in the first place was because advocates had successfully lobbied the drug's manufacturer to stop selling it for use in executions. *See Glossip*, 135 S. Ct. at 2733. Nothing about the OLC opinion or the federal government's announcement changes this dynamic.

Finally, in the evidentiary proceedings in state court, Sutton "offered no direct proof as to availability" of pentobarbital and could not identify a single manufacturer of the drug that could have provided it for use in executions at the time. *Abdur'Rahman*, 558 S.W.3d at 623–24. Neither of the new facts proffered by Sutton changes this underlying reality, and we have held that failure to show "evidence that the vendor [of a lethal-injection drug] would be willing to supply" the drug for executions precludes a plaintiff from meeting the available-alternative prong of Glossip. *See In re Ohio Execution Protocol*, 946 F.3d at 291. To succeed, Sutton must prove "more than just a showing of hypothetical availability." *Abdur'Rahman*, 558 S.W.3d at 623. He has not done so. He has therefore failed to demonstrate how the new facts may have affected the state courts' prior adjudication of his Eighth Amendment claim. The district court properly invoked res judicata.

*Sutton*, No. 19-6135, 2020 WL 504861, at *4. That opinion is unreported but directly on point, and nothing about Plaintiff's argument persuades this Court that it was wrongly decided or that there has been any intervening change in material facts that should lead to a different result in this case. Accordingly, this Court will adhere to its previous conclusion that the OLC opinion is not a basis for parties to the state-court case to avoid the application of res judicata.

Plaintiff argues that he raises a new claim in this case by asserting nitrogen gas as an alternative method of execution, because that method "was not a readily available alternative in 2018," but "[i]t is now." (Doc No. 23 at 33.) He asserts, without any support, that "[a]s states have moved away from midazolam-based protocols, they have developed the nitrogen gas protocol." (*Id.*) But inmates have been alleging nitrogen gas—administered through a mask or hood just as

12

Plaintiff alleges—as an alternative method of execution since at least 2016, when the United States District Court for the Western District of Missouri described the claim before it:

> Johnson suggests there is a feasible, readily implementable alternative method of execution: the State could execute him by nitrogen-induced hypoxia. Missouri law already permits execution by lethal gas, Mo. Rev. Stat. § 546.720.1, and nitrogen, which is used commonly in welding and cooking, is easy to obtain. The State could acquire nitrogen, fit a hood or mask over his head, and then administer enough nitrogen to kill him painlessly.

*Johnson v. Lombardi*, No. 2:15-CV-4237-DGK, 2016 WL 5852868, at *2 (W.D. Mo. Sept. 30, 2016) (going on to dismiss inmate's claim that lethal injection was unconstitutional as applied to him due to seizure disorder); *see also West v. Warden, Comm'r, Alabama Doc*, 869 F.3d 1289, 1293 n.9 (11th Cir. 2017) (noting that district court had denied inmates' motion to amend to add nitrogen asphyxiation as an alternative method of execution on the basis that the amendment would be futile in untimely claim); *McGehee v. Hutchinson*, No. 4:17-CV-00179 KGB, 2017 WL 1381663, at *22 (E.D. Ark. Apr. 15, 2017) (listing nitrogen hypoxia among six alternative methods of execution proposed in inmates' complaint); *Wilson v. Dunn*, No. 2:16-CV-364-WKW, 2017 WL 5619427, at *7 (M.D. Ala. Nov. 21, 2017) (considering inmates' proposal of nitrogen gas via a mask as an alternative method of execution).  In fact, nitrogen hypoxia was a proffered alternative in *Bucklew* in 2015, the very case on which Plaintiff relies for other purposes in his response. *Bucklew v. Precythe*, 139 S. Ct. 1112, 1121 (2019) (observing that Bucklew finally alleged "lethal gas" as his proposed alternative after remand in 2015, later identifying nitrogen gas specifically). Plaintiff suggests that states only began considering nitrogen gas as a method of execution after he could have pleaded it in his state-court complaint, but, as the Supreme Court noted in *Bucklew*, Mississippi and Oklahoma had authorized execution by nitrogen gas in 2017 and 2015, respectively, long before Plaintiff filed his last amended complaint in state court. *Id.* at 1130 n.1. Accordingly, the Court concludes that there is no reason Plaintiff could not have alleged nitrogen

hypoxia as an alternative method of execution during the litigation in state court. Because Tennessee's doctrine of res judicata "extends to all matters material to the decision of the cause which the parties exercising reasonable diligence might have brought forward at the time," *Regions Fin. Corp. v. Marsh USA, Inc.*, 310 S.W.3d 382, 396 (Tenn. Ct. App. 2009), Plaintiff is now foreclosed by res judicata from alleging this alternative method that he could have alleged in the state case.

Plaintiff also attempts to distinguish this case from his state-court case by arguing that he now proposes another alternative method of execution—omission of the second drug, vecuronium bromide, from the three-drug protocol—that was not considered by the state court. (Doc. No. 23 at 10, 14.) In fact, Plaintiff does not allege that alternative in this case. The only alternatives identified in the first amended complaint are nitrogen hypoxia and pentobarbital. (Doc. No. 13 at 2, 30–49.) But even if Plaintiff now alleged a two-drug protocol omitting the vecuronium bromide as an alternative, that would not be an intervening change of law or fact. Rather, it is an assertion Plaintiff could have made in support of his Eighth Amendment claims in state court but failed to do so in a timely manner. As the Court explained in its summary of the background of this case above, the state-court plaintiffs moved at the close of their proof at trial to amend the pleadings to allege omission of the vecuronium bromide as an alternative, but the trial court denied that amendment, as it explained in a subsequent written order:

> The Court denied Plaintiffs amending the pleadings to assert removal of vecuronium bromide from the Tennessee three-drug July 5, 2018 lethal injection protocol as a known, feasible and available alternative, *see Glossip v. Gross*, 135 S. Ct. 2726 (2015). This potential cause of action was known or could have been known by the Plaintiffs upon the filing of the lawsuit, and this cause of action has not been tried by express or implied consent.

Order Applying Tennessee Civil Procedure Rule 15.02, *Abdur'Rahman, et al. v. Parker*, No. 18-183-II(III) (Davidson Chancery Jul. 19, 2018) (filed as Doc. No. 1-7 in *West*, Case No. 3:19-cv-

14

00006). The Tennessee Supreme Court affirmed that denial, holding that through the "filing of an original complaint, an amended complaint, and then a second amended complaint, the Plaintiffs had repeated opportunities to plead removal of vecuronium bromide from the three-drug protocol as an alternative method of execution," and that, accordingly, "[t]he Plaintiffs have no justifiable excuse for their failure to plead a two-drug protocol as an alternative, given their acknowledged recognition of it during discovery and their second opportunity to amend the complaint just six days before the trial started." *Abdur'Rahman*, 558 S.W.3d at 622–23. Thus, any renewed effort by Plaintiff now to assert the same alternative he failed to timely assert in state court would not help him overcome res judicata. To the contrary, allowing this assertion to form the basis of a new lawsuit would condone the very sort of "piecemeal" litigation that the doctrine of res judicata exists to prevent. *Regions Fin. Corp.*, 310 S.W.3d at 396 ("To assent to plaintiff's insistence would be to condone piecemeal presentation of suits and defenses at the whim of the parties. Such is not the policy of our law." (quoting *McKinney v. Widner*, 746 S.W.2d 699, 706 (Tenn. Ct. App. 1987))).

Plaintiff also argues that Defendants are not entitled to dismissal on the basis of res judicata because Defendants have not filed the records of the state-court litigation to prove their defense in this action. (Doc. No. 23 at 27–30.) But Tennessee law allows its courts to take judicial notice of previous litigation in considering the application of res judicata. *Davis v. City of Memphis*, No. W201600967COAR3CV, 2017 WL 634780, at *8 n.6 (Tenn. Ct. App. Feb. 16, 2017) (collecting cases and observing that "[a] Tennessee court would have been authorized to take judicial notice of the federal court's order" in deciding issue of res judicata). More importantly, the Sixth Circuit has held that district courts may take judicial notice of prior litigation "which is not subject to reasonable dispute over its authenticity" when considering a res judicata defense raised in a motion to dismiss. *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008) (quoting

15

*Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999)); *see also Johnson v. City of Saginaw*, No. 17-CV-13174, 2017 WL 6512451, at *4 (E.D. Mich. Dec. 20, 2017) ("Courts have consistently held that a court may take notice of other court proceedings without converting a motion to dismiss into a motion for summary judgment.") Plaintiff's reliance on *Jackson v. Smith*, 387 S.W.3d 486, 492 (Tenn. 2012), which addresses the application of Tennessee's Rules of Civil Procedure with respect to how to raise a res judicata defense, does not persuade this Court otherwise.

In this case the existence of the state-court litigation is not subject to reasonable dispute. Basic procedural facts about the litigation and its outcome are established by a published opinion of the Tennessee Supreme Court. *Abdur'Rahman v. Parker*, 558 S.W.3d 606, 610 (Tenn. 2018). Additional documentation of the underlying litigation is already in this Court's records in other recent cases. *See, e.g.*, Complaint–Attachments 6 and 7, *West v. Parker*, No. 3:19-cv-00006 (M.D. Tenn. Nov. 2, 2018) (*West* Doc. Nos. 1-7, 1-8); Appendices to Memorandum Opinion, *id.* (M.D. Tenn. Jun. 3, 2019) (*West* Doc. Nos. 23-1, 23-2). And, as detailed above, those records have already formed the basis for repeated holdings by this Court and by the Sixth Circuit that the state-court plaintiffs are barred by res judicata from relitigating their Eighth Amendment method-of-execution challenges in this Court. *Sutton v. Parker*, No. 19-6135, 2020 WL 504861, at *2 (6th Cir. Jan. 31, 2020); *West v. Parker*, 783 F. App'x 506, 509 (6th Cir. 2019). This Court expressly noted in one of those opinions that "[f]ederal courts 'may properly take judicial notice of court filings and other matters of public record.' *CollegeSource, Inc. v. AcademyOne, Inc.*, 709 F. App'x 440, 442 (9th Cir. 2017); *see also New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) (holding that court ruling on motion to dismiss 'may consider materials in addition to the complaint if such materials are public records or are

otherwise appropriate for the taking of judicial notice'). Accordingly, the Court herein considers the existence and text of filings in Plaintiff's state-court litigation but does not rely on them for the truth or accuracy of their contents." *West*, 2019 WL 2341406, at \*6 n.1. The Court observed in its initial screening of this case in January that it was aware based on that previous litigation that res judicata was an issue in this case. (Doc. No. 6 at 3–4.) The Court rejects Plaintiffs' suggestion that it is necessary or appropriate to delay resolution of this matter by denying the pending motion only to require Defendants to re-file state-court records that are undisputed and indisputable.

Plaintiff's Count 1, the facial challenge to Tennessee's lethal-injection protocol, has already been litigated to judgment in state court and is thus barred by the doctrine of res judicata.

### 3. Arguments Specific to Count 2

In addition to the arguments the Court has rejected above, Plaintiff argues that Count 2, his as-applied challenge, is not barred by res judicata because it was not and could not have been litigated in the state-court case because it was non-justiciable during that litigation. (Doc. No. 23 at 31–34.) Specifically, Plaintiff alleges in his first amended complaint that the lethal-injection protocol is unconstitutional as applied specifically to him because of his certain unique characteristics. (Doc. No. 13 at 10–12.) First, Plaintiff alleges that he suffers from a seizure disorder that is only partially controlled by medication, and the conditions of death watch are likely to trigger seizures that will dislodge the IV during his execution and cause the lethal chemicals to enter his tissue or muscle rather than his vein. (*Id.* at 10–11.) And second, Plaintiff suffers from Major Neurocognitive Disorder, Schizophrenia, and Post-traumatic Stress Disorder (PTSD), which will cause him to become psychotic while on death watch. (*Id.* at 11–12.) He alleges that, presumably as a result of those conditions, he is sure or very likely to "suffer unnecessary pain, panic, suffocation, burning sensations, and mental anguish as a result of a dislodged IV." (*Id.* at

17

11–12.) Defendants correctly point out that Plaintiff does not allege that any of these conditions are new or were unknown before the state-court litigation, and that Plaintiff affirmatively alleges that his seizure disorder is "long-standing and well-documented." (Doc. No. 13 at 10–12; Doc. No. 19 at 9.)

Plaintiff argues that his as-applied challenge was not ripe under Tennessee law until September 20, 2019, when the state requested an execution date in his case. (Doc. No. 23 at 31.) He relies for this proposition on two cases, neither of which supports it.

First, Plaintiff alleges that because his "claim is based on his mental illness and medical disease, both of which are subject to treatment, his claim was not ripe until execution was imminent," for which he cites *Stewart v. Martinez-Villareal*, 523 U.S. 637 (1998). But *Stewart* concerned a habeas claim under *Ford v. Wainwright*, 477 U.S. 399 (1986), that the petitioner was incompetent to be executed by any method. The Supreme Court found that the petitioner's reasserted *Ford* claim, which had previously been dismissed as premature, was not a second or successive habeas claim for the purpose of habeas filing limitations under the Antiterrorism and Effective Death Penalty Act. *Stewart*, 523 U.S. at 645. That is immaterial to the issue of whether Plaintiff's known, preexisting conditions make a particular method of execution unconstitutional as applied to him as alleged in this Section 1983 lawsuit or when he could have raised such a claim. Any claim that Plaintiff's execution will be unconstitutional on the basis of mental incompetence is a claim that can only be raised in a habeas action after exhaustion of state remedies and is not properly considered in the context of this action. *In re Campbell*, 874 F.3d 454, 466 (6th Cir. 2017) (holding that a "competency claim under *Ford* is a habeas issue" and that "a *Ford* claim is properly raised in habeas, because, if successful, it wipes out the death sentence entirely").

18

Plaintiff also argues that his as-applied claim would have been subject to dismissal as unripe in 2018 pursuant to the Tennessee Supreme Court's decision in *West v. Schofield*, 468 S.W.3d 482 (Tenn. 2015). In that case, the state court simply held that "[b]ecause the death-sentenced inmates are not currently subject to execution by electrocution and will not ever become subject to execution by electrocution unless one of two statutory contingencies occurs in the future, their claims challenging the constitutionality of the 2014 statute and electrocution as a means of execution are not ripe." *Id.* at 484–85. This Court held the same earlier in this case when it dismissed Plaintiff's claims that Tennessee's alternative method of execution by electrocution is unconstitutional:

> In Counts 2, 3, and 4, Plaintiff challenges the constitutionality of electrocution. (Doc. No. 1 at 57–59.) He alleges, however, that lethal injection is now the default method of execution in Tennessee and that an inmate will be executed by electrocution under two circumstances: if he elects electrocution by signing a written waiver, or if lethal injection is declared unconstitutional. (*Id.* at 8–9, 19.) He does not allege that either of those events has occurred. . . . Plaintiff's complaint does not establish a strong likelihood that he will face electrocution. Accordingly, his claims regarding the constitutionality of electrocution are not ripe for judicial review and must be dismissed without prejudice for lack of subject matter jurisdiction."

(Doc. No. 6 at 4–6.)

Again, those decisions have nothing to do with when Plaintiff could have raised his pending as-applied challenge to Tennessee's lethal-injection protocol. The Tennessee Supreme Court discussed the lack of scheduled execution dates in *West* solely to explain that the inmates would receive notice in connection with the setting of future executions of whether the state planned to carry out their executions via the presumptive lethal-injection method or would resort to electrocution as provided by statute. *West*, 468 S.W.3d at 494. The state court determined that such notice would allow the inmates sufficient time to bring suddenly-ripe challenges the constitutionality of electrocution if that method were to be chosen by the state. *Id.* Its holding did

not support any delay in challenging the **presumptive** method of execution by lethal injection, either facially or as-applied.

Plaintiff also argues that "[h]is physical and mental health have worsened" since his state claims were litigated. (Doc. No. 23 at 33.) But a worsening of symptoms does not give rise to a new claim unless Plaintiff's condition before the deterioration could not have formed the basis of the claim. That is not the case here, where Plaintiff's as-applied claim boils down to the allegation that—because of long-standing physical and mental disorders—the conditions of death watch and stress of impending execution will cause him to have a seizure that will result in a botched execution. The fact that Plaintiff's symptoms have become more severe might provide additional support for that claim, but they do not materially transform it into something new. New or recurring symptoms of preexisting conditions do not materially change the nature of Plaintiff's as-applied claim, which he could clearly have raised in state court.

Plaintiff's as-applied challenge to Tennessee's lethal-injection protocol is thus also barred by the doctrine of res judicata.

**B.      Remaining Defenses**

In light of the Court's finding that this action must be dismissed on the basis of res judicata, the Court need not resolve the parties' disputes regarding the statute of limitations or the merits of the complaint.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss will be granted, and the remaining claims in this action will be dismissed with prejudice.

An appropriate Order will enter.


_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE