IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DONALD MIDDLEBROOKS, | **CAPITAL CASE** |
| Plaintiff, | No. 3:19-cv-01139 |
| v. | Consolidated with No. 3:18-cv-01234 |
| LISA HELTON, et al. | |
| Defendants. | JUDGE CAMPBELL |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO TEMPORARILY REOPEN CASE AND ISSUE ORDER FOR
PRESERVATION OF EVIDENCE**

On April 22, 2022, the Court issued an Order that certain evidence be preserved by Defendants. Middlebrooks, R. 57; King R. 221.[1] Counsel for defendants have assured counsel for Plaintiffs that they fully intend to comply with that order, and to fulfill their continuing duty to preserve evidence, above and beyond that order. However, the Department of Corrections is a large institution with over 6,000 employees, and the senior leadership is in a state of flux. *See* Defendants'

---

[1] References to filings in *King v. Helton*, 3:18-cv-01234, will be identified as King, R. #, while references to filings in *Middlebrooks v. Helton*, 3:19-cv-01139 will be identified as Middlebrooks, R #.

Memorandum, R. 225, PageID#12782. Absent court order, and in light of past events, the sincere promises of Defendants' counsel may be nothing more than hollow words.

"[I]t is beyond question that a party to civil litigation has a duty to preserve relevant information… when that party 'has notice that the evidence is relevant to litigation or … should have known that the evidence may be relevant to future litigation.'" *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) (quoting *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)). And our rules make clear that a party may face sanctions, up to default judgment against them, if "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed.R.Civ.Pro. 37(e).

However, despite Defendants pre-existing obligation to preserve evidence, this Court may issue a specific preservation order based on "a demonstration that a real danger of evidence destruction exists, a lack of any other available remedy, and a showing that the preservation order is an appropriate exercise of the court's discretion." *John B.*, 531 F.3d at 459. In this case, a preservation order is necessary and proper.

**DEFENDANTS HAVE ADMITTED A PAST LACK OF CANDOR**

On May 6, 2022, counsel for Defendants provided notice that their prior filings before this Court may contain "factual inaccuracies or misstatements." R. 58, PageID#559. Defendants' counsel pledged to "correct any inaccuracies and misstatements once the truth has been ascertained." *Id*. Defendants' counsel have

yet to identify such inaccuracies or misstatements. However, some are quite obvious from the record.

On example involves false deposition testimony regarding the testing of lethal injection chemicals (LIC) for endoxins. The Drug Procurer swore under oath that the LIC were tested for sterility, potency and *endotoxins*. King, R. 184-3, PageID#6140. The compounding pharmacist repeatedly swore under oath that the LIC were tested for sterility, potency, and *endotoxins*. King, R. 184-35, PageID#10918, 10921-23. However, the recently released "Tennessee Lethal Injection Protocol Investigation" report (henceforth "LI Report"), Ex. 1, establishes that these sworn representations were false. The LIC prepared for executions from 2018 until 2022 were not tested for endotoxins. Ex. 1 at 1-2. In response to the investigation, the pharmacist claimed—contrary to his[2] deposition testimony—that he had no idea that endotoxin testing was required. *Id.* at 17-18. Moreover, the drug procurer was the recipient of the test results, which clearly demonstrated that endotoxin testing was not occurring.[3] *Id.* at 20-21.

---

[2] The identities of the Drug Procurer and the pharmacist are protected. Male pronouns are used for both, regardless of what their actual gender identities may be.

[3] Albeit, the Drug Procurer claims that he was unaware of the difference between sterility testing and endotoxin testing, and thought they were the same thing. Ex. 1 at 21, n. 75. However, at deposition, the Drug Procurer, after testifying that the drugs were tested for sterility was asked "Is there anything else that they test it for?" And he answered, "Potency and endotoxins." King, R. 184-3, PageID#6140. The Drug Procurers' candor and understanding will likely need to be further explored, should this case be re-opened.

## DISCOVERY PROVIDED PREVIOUSLY IS LESS COMPLETE THAN INFORMATION PROVIDED TO THE LETHAL INJECTION INVESTIGATOR

The LI Report observes that following the stay of the Oscar Smith execution, the Attorney General's Office requested all lethal injection testing records. Ex. 1 at 20. The Department of Corrections then provided "31 pages of testing results dating back to 2018, although only 17 of those had been produced previously in litigation." *Id.* That is, the Defendants in this cause had previously failed to provide fulsome and complete records to their own attorneys.

## NEW COMMISSIONER, NEW EMPLOYEES, AND OTHER EMPLOYEES BEING LET GO

As counsel for the Defendants has observed, Governor Lee is in the process of changing senior leadership in TDOC. Some individuals, such as the Drug Procurer could be let go. Following such an individual's departure, there is a significant risk that as part of the "normal course of business" their computers, government owned cell phones, email accounts, and filing cabinets may be cleaned and emptied. As an example of this concern: the United States Secret Service, as part of a regular "device replacement program" erased text messages sent and received by their agents during the January 6, 2021 attack on the capital, and thus were unable to fully comply with a request for records by the United States House of Representatives.[4]

The departing individuals may be replaced by others who have no familiarity

---

[4] *See* Secret Service Text Messages Around Jan. 6 Were Erased, Inspector General Says - The New York Times (nytimes.com) last visited January 11, 2023.

with this litigation, and who would not recognize evidence that needs to be preserved. However, the new hires may have a strong desire to have a clean office and an uncluttered filing cabinet.

Finally, defendant Lisa Helton, while remaining employed by the Department of Corrections, has been replaced as Commissioner by Frank Strada.[5] Commissioner Strada comes from Arizona, is new to Tennessee, and presumably has little to no knowledge of this litigation. Absent a preservation order, he has no particular reason to recognize his obligation to preserve evidence related to this cause.

## CONCLUSION

Plaintiff appreciates counsel for the Defendants' assurance that evidence will be preserved. However, based on the past conduct of the Defendants in presenting false testimony and failing to turn over evidence to their own attorneys, and in light of the radical changes in the personnel at the Department of Corrections, more than a promise to follow the law is needed. Pursuant to *John B.* and under the specific circumstances of this case, a preservation order is needed and appropriate.

Respectfully Submitted,

FEDERAL PUBLIC DEFENDER FOR THE
MIDDLE DISTRICT OF TENNESSEE

KELLEY J. HENRY
Supervisory Asst. Federal Public Defender

AMY D. HARWELL
Asst. Chief, Capital Habeas Unit

---

[5] *See* Commissioner Frank Strada (tn.gov) last visited January 11, 2023.

                        RICHARD LEWIS TENNENT
                        KATHERINE DIX
                        MARSHALL JENSEN
                        Asst. Federal Public Defenders
                        810 Broadway, Suite 200
                        Nashville, TN 37203
                        Phone: (615) 736-5047
                        Fax: (615) 736-5265

/s/ *Kelley J. Henry*
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on January 12, 2023, I filed this memorandum by means of the Official Court Electronic Document Filing System, CM/ECF, for the Middle District of Tennessee, which will email a copy to opposing counsel:

Scott Sutherland, Deputy Attorney General
Dean Atyia, Asst. Attorney General
Miranda Jones, Asst. Attorney General
Mallory Schiller, Asst. Attorney General
Cody N. Brandon, Asst. Attorney General
John R. Glover, Asst. Attorney General
Office of the Attorney General and Reporter
Law Enforcement and Special Prosecutions Division
P.O. Box 20207
Nashville, Tennessee 37202-0207.

Additionally, counsel has served a copy of this motion on counsel for Terry King, via email:

Alex Kursman
Lynne Leonard
Anastassia Baldridge
Hayden Nelson-Major
Assistant Federal Defenders
Federal Community Defender for the E.D. Penn.
Suite 545 West, The Curtis
601 Walnut St.
Philadelphia, PA 19106
(215) 928-0520
alex_kursman@fd.org

lynne_leonard@fd.org
ana_baldridge@fd.org
hayden_nelson-major@fd.org

David Esquivel
Sarah Miller
Jeremy Gunn
Michael Tackeff
Bass, Berry & Sims
150 Third Ave. South
Nashville, TN 37201
(615) 742-6200
desquivel@bassberry.com
smiller@bassberry.com
jeremy.gunn@bassberry.com
michael.tackeff@bassberry.com

Alice Haston
Amy Rao Mohan
Christopher C. Sabis
Sherrard Roe Voight & Harbison, PLC
150 Third Ave. South
Suite 1100
Nashville, TN 37201
(615) 742-4539
ahaston@srvhlaw.com
amohan@srvhlaw.com
csabis@srvhlaw.com

>*/s/ Kelley J .Henry*
> Counsel for Plaintiff