IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DONALD MIDDLEBROOKS, ) <br> ) <br> Plantiff, ) <br> ) <br> v. ) <br> ) <br> FRANK STRADA, in his official capacity ) <br> as the Commissioner of the Tennessee ) <br> Department of Correction, and ) <br> KENNETH NELSEN, in his official ) <br> capacity as Warden of Riverbend ) <br> Maximum Security Institute, ) <br> ) <br> Defendants. ) | No. 3:19-cv-01139 <br> Judge Crenshaw <br> Magistrate Judge Holmes <br> **CAPITAL CASE** |

# REPLY

A contested motion for leave to amend typically calls on the Court to weigh a number of factors, including "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005). Defendants, however, have simplified matters by failing to muster any argument in their favor with regard to any factor but one: that the motion, if granted in full, would be "prejudicial to Defendants, the State, and the interests of justice." R. 116 at 3.

But every supposed instance of prejudice that Defendants have identified is unpersuasive for one of two reasons: either the alleged prejudice is simply an ordinary

1

incident of litigation, which would, if anything, cause much more inefficiency if shunted over to a new case; or the alleged prejudice is a hardship that Defendants voluntarily assumed for themselves. Neither form of prejudice is of the type that Rule 15 guards against.

I. **The ordinary inconvenience of litigating expeditiously raised, legitimate claims is not a ground for denying a Rule 15 motion.**

All litigation takes time, effort, and money. That is why Rule 15 does not forbid amendments that would be merely "prejudicial," in some absolute sense, but rather disfavors those that would be *unduly* prejudicial. "[T]he 'prejudice' which arguably results from having to defend a lawsuit is not deemed to be 'undue' prejudice." *Jarboe v. Cherry Creek Mortg. Co.*, No. 19-CV-01529-CMA-KLM, 2020 WL 5107338, at *4 (D. Colo. Aug. 28, 2020); *see also Jones v. Horizon Shipbuilding, Inc.*, No. CIV.A. 11-0012-WS-M, 2012 WL 5187786, at *2 (S.D. Ala. Oct. 19, 2012) ("Having to absorb the ordinary costs of litigation is not undue prejudice.") (cleaned up); *In re Juliet Homes, LP*, No. 07-36424, 2010 WL 5256806, at *5 (Bankr. S.D. Tex. Dec. 16, 2010) ("These inconveniences are simply an unfortunate, yet ordinary, byproduct of litigation, and they are not the type of disadvantages that constitute undue prejudice."); *Collins v. Ace Mortg. Funding, LLC*, No. CIV.A08-CV-01709-REB-KLM, 2008 WL 4457850, at *1 (D. Colo. Oct. 1, 2008) ("The ordinary burdens associated with litigating a case do not constitute undue burden.").

All of the supposed hardships of which Defendants complain—except for one—are simply ordinary burdens of litigation. They complain about being subjected to discovery, R. 116 at 3, but "[t]he need for additional discovery typically is not

sufficient to demonstrate prejudice, particularly when there is adequate time to conduct the additional discovery." *RMD, LLC v. Nitto Americas, Inc.*, No. CV 09-2056-JAR-DJW, 2009 WL 10689046, at *3 (D. Kan. Nov. 17, 2009) (citing *U. S. ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank and Trust Co. of Chicago*, 889 F.2d 1248, 1255 (2d Cir. 1989); *SEC v. Nacchio*, No. 05-cv-00480-MSK-CBS, 2008 WL 2756941, at *7 (D. Colo. July 14, 2008); *CenterForce Techs., Inc. v. Austin Logistics, Inc.*, No. 99-243-MMS, 2000 WL 652943, *6 (D. Del. Mar. 10, 2000)). They complain about having to engage in "trial preparation," R. 116 at 3, but that lament, if anything, seems to reflect a concession that Mr. Middlebrooks has viable claims justifying a trial on the merits. And they complain about having to engage in "motion practice," *id.*, but that is just what federal civil litigation *is*.

Defendants conspicuously do not argue that any of the proposed amendments would be futile—possibly because most, if not all, of the arguments they would raise to that effect already failed in parallel state-court litigation involving other plaintiffs. *See* R. 112-3. They just want to force him to file a separate Complaint, under a separate docket number, rather than pursuing the vastly more efficient course of raising the claims here. None of the ordinary considerations underlying Rule 15 support such an approach.

## II. Any hardship associated with the stay of execution was voluntarily assumed by Defendants based on their assessment of their own interests.

Defendants do identify one factor that goes beyond the ordinary costs of civil litigation: the currently active stay of Mr. Middlebrooks' execution, which Defendants have agreed shall remain in force at least "until a judgment is entered by the district

3

court in [this] case." R. 59-3 at 2  But that stay is exactly what Defendants consented to, out of their own self-interest, when they found themselves in the unenviable position of, among other things, having presented unambiguously false testimony to the Court in the case with which Mr. Middlebrooks' was, until recently, consolidated. *See, e.g.*, Ex. A (*King v. Strada*, R. 184-3) at 78 (anonymized TDOC employee testifying falsely that required testing was performed); Ex. B (*King v. Strada,* R. 184-35) at 160 (TDOC contracted pharmacist providing same false testimony); *but see* R. 59-3 at 3 (agreement that Mr. Middlebrooks and Terry King would not oppose withdrawal of the motion for summary judgment through which the false testimony was presented).

Defendants apparently wish that they had entered into a different agreement, which only required them to consent to a stay for as long as it took to litigate a narrow, purely facial 8th Amendment challenge posing no issues of maladministration—even if there are other valid claims to resolve. But the Stay Agreement unambiguously ties the stay to the pendency of the case, not the resolution of any particular claim. Defendants' buyers' remorse over the price they chose to pay in their attempts to navigate the fallout of their own wrongdoing is not an undue hardship.[1]

---

[1] Defendants ask the Court to rewrite the Stay Agreement in another way as well, by reading Defendants' promise not to oppose amendment to cover only a facial challenge *based on the Eighth Amendment.* No such limitation exists in the agreement itself.

4

## III. Conclusion

Denying Mr. Middlebrooks' motion with regard to Counts 1.2 and 1.3 will not serve the interests of either justice or efficiency. Defendants' opposition, rather, is nothing more than a backdoor attempt to ask this Court to re-form the parties' agreement with terms more favorable to the government. Because that is not a legitimate purpose of Rule 15, the motion should be granted in full.

Respectfully submitted,

Kelley J. Henry, BPR # TN 21113
Chief, Capital Habeas Unit

Amy D. Harwell, BPR # TN 18691
Asst. Chief, Capital Habeas Unit

Eli Swiney, BPR # TN 026626
Research and Writing Specialist
Katherine Dix, BPR # TN 22778
Kit Thomas, BPR # WV 13477
Drew Brazer, BPR # TN 042363
Asst. Federal Public Defender
FEDERAL PUBLIC DEFENDER
MIDDLE DISTRICT OF
TENNESSEE
810 Broadway, Suite 200
Nashville, TN 37203
Phone: (615) 736-5047
Fax: (615) 736-5265
Email: Kelley_Henry@fd.org


/s/ Kelley J. Henry
Kelley J. Henry, BPR # TN 21113
Counsel for Plaintiff

## Certificate of Service

I, Kelley J. Henry, certify that on July 13, 2025, a true and correct copy of the foregoing was served via the Court's electronic filing system to Cody Brandon, Asst. Attorney General.

/s/ Kelley J. Henry
Kelley J. Henry
